**Alfred G. JONES, Appellant,**

**v.**

**Sherman H. CROUSE, or his successor, Warden, Kansas State Penitentiary, Lansing, Kansas, Appellee.**

**No. 646–70.**

United States Court of Appeals, Tenth Circuit.

Sept. 16, 1971.

---

William R. Hebeler, Denver, Colo., for appellant.

Vern Miller, Atty. Gen., and Edward G. Collister, Jr., Asst. Atty. Gen., Topeka, Kan., for appellee.

Before SETH and DOYLE, Circuit Judges, and KERR, District Judge.

KERR, District Judge.

Appellant, Jones, was charged, tried and found guilty by a jury in the Sedwick District Court of Kansas, on January 16, 1967, of eight separate crimes, including murder in the first degree and armed robbery. The Supreme Court of Kansas reviewed the case on direct appeal and upheld the conviction. State v. Jones, 202 Kan. 31, 446 P.2d 851 (1968). The Supreme Court subsequently denied relief to Appellant on his appeal under K.S.A. 60–1507 collaterally attacking the judgment. Jones v. Kansas, 204 Kan. 839, 466 P.2d 353 (1970). Appellant, having exhausted his state remedies, appealed to the United States District Court for the District of Kansas seeking a writ of habeas corpus. That court did not deem it necessary to conduct an independent evidentiary hearing and entered an order dismissing the action. From this denial of relief Appellant appeals to this court. In order to understand the issues raised in this appeal it is essential that the relevant facts be reviewed.

Some time during the hours of 10:30 p. m., on Saturday, July 16 and 3:45 a. m., on Sunday, July 17, 1966, Steen's Discount Store in Wichita, Kansas, was robbed of $3,946.00. Two murders were also committed, the victims being Sue M. and John Marshall, husband and wife. John was an employee of the store and his wife, who was employed elsewhere, joined him at the market on the evening of July 16. When she arrived John was in the process of accounting for the money in the cash registers. The other employees left the store at approximately 10:35 p. m., leaving the Marshalls alone. They locked the doors on their way out. At approximately 3:40 a. m., on July 17, a merchant police officer, while making a routine check of the buildings in the area, discovered one of the front doors of Steen's Market to be unlocked. The officer notified police, who, upon arrival and after investigation, discovered the body of John Marshall lying by the store's meat counter. Sue Marshall was found dead in a corner of the meat cooler.

Evidence at the trial conclusively showed that the bullets fired into the Marshalls were from Appellant's .32 caliber pistol. The uncontroverted evidence showed that Appellant had purchased the gun and bullets from a pawn shop on July 9, 1966, the seller identifying Appellant as the purchaser. The evidence also showed that Appellant had the gun in his possession at 4:30 p. m., July 16. A witness who passed by the east side of the store at about 10:35 p. m. heard three loud sounds, similar to someone beating on metal pots. It may be noted that four shots were fired at the scene but the witness could not hear the fourth shot that was fired in the meat cooler. Not until the next day, when the witness heard about the murders of the Marshalls, did he connect the sounds he heard with the firing of a pistol. He immediately reported his information to the police. The evidence also revealed that Appellant displayed a large sum of money Saturday night, July 16, and the following day he lost large sums of money in a series of crap games. Monday, July 18, Appellant informed his cousin that he had lost $1,600.00 gambling.

It was the State's contention that Appellant entered the store during the evening business hours and hid in the meat department, which was closed at night and which was not visible from the street or other parts of the store. After the other employees left, it was assumed by the State, that Appellant forced the Marshalls into the meat department and there shot them to death.

Two search warrants were issued on July 18, 1966, to search Appellant's two places of residence. One residence was at 2508 Stadium, Wichita, Kansas, and the other was at 2208 Shadybrook, also in Wichita. Appellant's parents resided at the Shadybrook address and appellant had a bed in the basement in which he occasionally slept. The Stadium residence was within three blocks of Steen's Market. The applications for the two warrants were essentially the same except for the difference of addresses.

Captain Floyd Hannon, affiant, requested Judge Noone of the district court to issue the search warrants on probable cause. Hannon presented to the magistrate two affidavits stating that he had knowledge a robbery and murder occurred at Steen's Super Discount between 10:40 p. m., of July 16, 1966, and 3:45 a. m., of July 17, 1966. He indicated in the affidavits that United States money in wrappers was taken and that the two victims were shot with a .32 caliber pistol. Hannon further stated that according to informants this was the only substantial robbery loss occurring before Appellant was seen with a large sum of money in his possession. Affiant swore that he was informed that Appellant, while in possession of a sack of money, had stated he shot those two "M_____ F_____'s" in the head. Judge Noone issued the warrants finding that he had probable cause to believe there was an offense against the laws of Kansas, and that specific items of property which were the "fruits, instrumentalities or evidence of such offense" could be found at the locations set out in the applications.

The search of the Shadybrook address resulted in finding a large stack of bills, totaling $712.00. A search of Appellant's bed in the basement led to the discovery of two one dollar bills and one five dollar bill hidden under the mattress. The premises outside the house were not searched at this time.

Detective Stewart and other officers went to the Stadium Street address armed with their search warrant. When Stewart approached the front door he could see Appellant through the screen door lying on a couch. Under the circumstances, Stewart, although not knowing Appellant, was justified in being reasonably cautious since it was possible Appellant committed the murders. If his identity had been known to the officers at this time, he probably would have been arrested for murder. Stewart knocked on the screen door and identified himself as a police officer, saying "Police Officer, I'd like to talk to you."

He then saw Appellant roll over and reach for a gun lying on the floor near the couch. Without hesitation, Stewart entered the house and quickly moved toward Appellant, kicking the gun from his hand. When Appellant was identified he was immediately put under arrest. The search which followed turned up a .357 magnum pistol and two .32 caliber cartridges, one being outside the house and the other being inside.

On July 20, 1966, another search warrant was issued by Judge Noone upon the application of Captain Hannon. The warrant was issued for the search of the Shadybrook Street premises. The application for this warrant differed from the July 18 applications in that it added Hannon had been informed Appellant had a large sum of money at his Shadybrook residence. The police officers who searched the premises found appellant's .32 caliber pistol in the yard with four empty chambers, indicating it had been fired four times.

Appellant contended below that the affidavits upon which the three search warrants were based were insufficient to enable a magistrate to find requisite probable cause to issue the search warrants. He premises this contention on the grounds that the allegations contained in the affidavits were hearsay based on hearsay, and that there was insufficient information presented to the magistrate upon which he could conclude that the unidentified informants were credible or reliable. Thus the decision for this court to make is whether the magistrate was presented with adequate evidence in the affidavits from which he could find probable cause to issue the search warrants.

Before an affidavit can be held to be valid upon which a warrant is to issue there must be sufficient evidence presented under oath by an officer to establish probable cause to search. Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933). This court has held that "probable cause is something more than suspicion * * * and something less than evidence which would sustain a conviction * * *. Probable cause is concerned with probabilities, 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'". United States v. Berry, 423 F.2d 142, 144 (10th Cir. 1970). The use of hearsay evidence has been held to be sufficient to establish probable cause, "so long as a substantial basis for crediting the hearsay is presented". Jones v. United States, 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960).

To establish a substantial basis for crediting the hearsay in the affidavits it seems best to utilize the test found in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). See also Gallagher v. United States, 406 F.2d 102, 108 (8th Cir. 1969). Under that test "the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics [in that case] were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, * * * was 'credible' or his information 'reliable'". Aguilar v. Texas, supra.

The statements which set out the underlying circumstances in the affidavits here involved satisfy the test laid down by the Supreme Court. The material statements found in the July 18, 1966, applications are as follows: "This is the only substantial robbery loss occurring shortly before * * * Jones was, according to several informants who have been reliable in the past, in possession of a large sum of money, and affiant is informed by a person whose truthfulness he has reason to believe, that * * * Jones stated in connection with the sack of money he had that he shot those two 'M_____ F_____'s' in the head". The July 20, 1966, application to search the Shadybrook premises also had added to it that "Informants states (sic) that * * *

Jones had a large sum of money at his residence: * * *".

The above quoted statements seem to fulfill the first standards of the *Aguilar* test which requires the affiant to inform the magistrate of how the informant arrived at his conclusion. It has been held that the test is satisfied if a sufficient statement has been made which relates how the informant has gathered his information. United States v. Mendoza, 433 F.2d 891, 894 (5th Cir. 1970). For the statements of affiant to be sufficient the test only requires that "some" of the underlying circumstances be set out in the affidavit. The statements of affiant here, while general in nature, do relate how the informant got his information. They explain that the informants knew the money would be found where they claimed because of the bag of money Appellant had in his possession and also by his comments relating to the robbery. This is satisfactory since "(t)echnical requirements of elaborate specificity * * * have no proper place in this area". United States v. Beck, 431 F.2d 536, 538 (5th Cir. 1970). United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

The second requirement of the test demands that the magistrate be informed of the underlying circumstances which led the affiant to believe the undisclosed informant was "credible" and his information was "reliable". This requirement is also held to be satisfied by the statements in the affidavits. All three affidavits stated that the evidence was presented by informers "who have been reliable in the past * * * whose truthfulness he [affiant] has reason to believe". These statements made by affiant created a substantial basis for crediting the hearsay, and established probable cause to search. Factual statements of past reliability are sufficient basis "for the magistrate to gauge independently the reliability of the informer". United States v. Mendoza, supra. The Supreme Court in the case of United States v. Ventresca, supra, stated that it is not required that the affidavit, which is based on hearsay evidence, set out that the affiant made direct personal observations so long as the affiant informs the magistrate of the underlying circumstances that led him to believe the informant "* * * 'whose identity need not be disclosed * * * was 'credible' or his information 'reliable'." The Court went on to say that "where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner". *Id.* at 109, 85 S.Ct. at 746.

For the reasons stated we hold that the three affidavits presented a sufficient basis upon which the magistrate could find probable cause to issue the search warrants.

Affirmed.