# STATE OF MARYLAND *v.* KRAFT

[No. 344, September Term, 1972.]

*Decided July 30, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES, and LEVINE, JJ.

*George A. Eichhorn, III, Assistant Attorney General,* with whom· were *Francis B. Burch, Attorney General, Gary Melick, Assistant Attorney General,* and *Joseph D. Weiner, State's Attorney for St. Mary's County,* on the brief, for appellant.

*Neal P. Myerberg* for appellee.

SMITH, J., delivered the opinion of the Court. MURPHY, C. J., and McWILLIAMS AND LEVINE, JJ., dissent and LEVINE, J., filed a dissenting opinion in which MURPHY, C. J., and McWILLIAMS, J., concur at page 618 *infra.*

The sole question presented in this case is the validity of a search warrant, whether the affidavit properly established probable cause. The Court of Special Appeals in *Kraft v. State,* 16 Md. App. 347, 297 A. 2d 328 (1972), held the warrant should not have been issued. We granted certiorari in order that we might consider the question, particularly in the light of our holding in *State v. Edwards,* 266 Md. 515, 295 A. 2d 465 (1972). For reasons which we shall set forth, we conclude the Court of Special Appeals erred in its holding.

The warrant in question was issued upon the basis of the application and affidavits of two deputy sheriffs of St. Mary's County. The application was for a warrant to search a residence in Lexington Park, St. Mary's County, said to be

"occupied by one; Betty (Blaylock) Kraft, and one David Thompson." At trial the rental agreement between the landlord and Mr. Thompson and Mrs. Kraft was placed in evidence. The information contained in the affidavit submitted to obtain the search warrant was as follows:

"That on or about 1 September 1971, one; Peter Fletcher, a known and convicted Heroin user was seen at this apartment. Further that on the 3RD of October 1971, information from a reliably established informant, who is responsible for eleven narcotics arrests, states that the Thompson subject is making trips to the Wash. D.C. area twice weekly to obtain narcotics, and is transporting them back into the County. Further, this informant states that he has personally observed the Thompson subject with 100 units of LSD on the 2ND of October 1971.

"Further, that on 4 October 1971, information from a second informant, who has provided reliable information to this Dept. for the past six months, and who has also purchased LSD and other narcotics from the Thompson [sic] in the past states that he had seen large quantities of LSD and amphetamines in the Thompson apt. on 3 October 1971. Further, on 6 October 1971, this same informant states that he personally observed a large quantity of LSD, described as; White Lightnings, and Orange Paradise, in a tin can in the refrigerator in the Thompson apt.

"The Kraft subject residing at this address is known by Dept. Clarke to be an admitted user of Heroin."

The Court of Special Appeals in striking down the warrant said in pertinent part:

"In the instant case the assertion that the first informant 'is responsible for eleven narcotics arrests,' unsupported by further detail would not

enable the magistrate to conclude that that informant was credible or his information reliable. He was not told whether the cases had been tried or, whether they had resulted in acquittals or convictions. The magistrate was not informed whether materials found at the time of the arrests corresponded with the information supplied by the informant. He was not apprised as to the police assessment of the value of the information furnished by the informant, e.g., whether it amounted to more than an underworld rumor which, to be of any value, would have to be corroborated by independent information. The magistrate was not informed whether the informant's previously furnished information had always proved correct. See concurring opinion of Moylan, J. in *Dawson v. State*, 14 Md. App. 18, 284 A. 2d 861 at 870.

"Referring to the second informant, it is clear the 'reliable information' is too general to support reliability under *Moore v. State*, [13 Md. App. 711, 284 A. 2d 614 (1971)]. The affidavit further says that the second informant has 'purchased LSD and other narcotics from the [sic] Thompson in the past.' While admission of crime by an undisclosed informant may be an element to consider in determining that informer's credibility, *U. S. v. Harris*, [403 U. S. 573 (1971),] here the assertion of generally related criminal activity in the indefinite past cannot lend credibility to an informant who is baldly alleged to be reliable. [Citing cases in the Court of Special Appeals.] As to remoteness in time, see, *Johnson v. State*, 14 Md. App. 721, 288 A. 2d 622.

"Although the statement '[t]hat on about 1 Sept. 1971, one; Peter Fletcher, a known and convicted Heroin user was seen at this apartment,' would add some slight support to the informants' information, unfortunately the statement is deficient in that the

observer is not identified. We cannot make the assumption that the observer was one of the affiants; the affiants could well have received this information from others. The final statement that '[t]he Kraft subject residing at this address is known by Dept. Clarke to be an admitted user of Heroin' is as bald and unilluminating an assertion as the statement 'entitled to no weight' that 'William Spinelli is known to this affiant and to federal law enforcement agents and local law enforcement agents as a bookmaker, an associate of bookmakers, a gambler, and an associate of gamblers.' *Spinelli v. United States*, [393 U. S. 410 (1969)]. See *Grimm v. State*, 7 Md. App. 491, 256 A. 2d 333. Here, there is absolutely nothing to indicate the source of the officer's 'knowledge' concerning the 'Kraft subject.'

"The credibility of an unnamed informant is at best, suspect. Where, as here, the informers were not shown to be reliable, and there are no legally competent facts, circumstances or observations to add to their information, we cannot say that a prudent and cautious man would be justified in finding probable cause to believe that an offense was being committed at the residence sought to be searched. *Grimm v. State*, 6 Md. App. 321, 251 A. 2d 230. Of course, the allegations of personal observations by each of the unnamed informants would have supported the finding of probable cause had their reliability in some way been established, or their information corroborated." *Id.* at 351-52.

We approach our evaluation of this affidavit bearing in mind the old quotation that "a man's house is his castle"; [1] that in an effort to protect future citizens of this great country from abuses known in the past many of our forebears insisted as a condition to ratification of the Constitution of the United States that there should be added

---

1. Sir Edward Coke, Institutes III (1644).

to that document the amendments commonly called the "Bill of Rights"; that under one of those amendments to that Constitution, the Fourth, "[t]he right of the people to be secure in their ... houses ... against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized"; and that what we are here concerned with is the delicate balancing of the rights of the individual on the one hand to be secure in his home and on the other the right of society in the person of the sovereign to pursue violators of the law.

In essence, the issue here is whether there was probable cause for the issuance of the warrant, a term defined by Chief Judge Brune for this Court in *Dean v. State*, 205 Md. 274, 284, 107 A. 2d 88 (1954), as less than certainty of truth, but more than suspicion or possibility. It is conceded that if this affidavit satisfies the various tests previously laid down by the Supreme Court of the United States, probable cause is established. In our evaluation of this affidavit in comparison with affidavits in other cases we must remember the comment in *State v. Kasabucki*, 52 N. J. 110, 244 A. 2d 101 (1968):

> "[N]o mathematical formula exists for application either by a trial or appellate court in deciding whether a search warrant was supported by probable cause. Each case depends upon a sensitive appraisal of the circumstances shown to the issuing judge." *Id.* at 117-18.

We shall also bear in mind the comment of the Supreme Court in June of this current year in *Cady, Warden v. Dombrowski*, 413 U. S. 433, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973), "The ultimate standard set forth in the Fourth Amendment is reasonableness."

In *Aguilar v. Texas*, 378 U. S. 108, 111, 84 S. Ct. 1509, 12 L.Ed.2d 723 (1964), it was pointed out that the preference for

a warrant is so marked that less persuasive evidence will justify the issuance of a warrant than would justify a warrantless search or warrantless arrest. Mr. Justice Goldberg there said for the Court:

> "Thus, when a search is based upon a magistrate's, rather than a police officer's, determination of probable cause, the reviewing courts will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant,' [*Jones v. U. S.,* 362 U. S. 257, 270, 80 S. Ct. 725, 4 L.Ed.2d 697 (1960),] and will sustain the judicial determination so long as 'there was substantial basis for [the magistrate] to conclude that narcotics were probably present . . . .' " *Id.* at 111.

In fact, he went on to quote from the opinion of Mr. Justice Jackson in *Johnson v. United States,* 333 U. S. 10, 13-14, 68 S. Ct. 367, 92 L. Ed. 436 (1948), where the Court said that the public is protected by "requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime."

In *United States v. Ventresca,* 380 U. S. 102, 85 S. Ct. 741, 13 L.Ed.2d 684 (1965), Mr. Justice Goldberg again spoke for the Supreme Court, saying:

> "[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A

grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

"This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based. See *Aguilar v. Texas, supra.* . . . However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, *the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. Jones v. United States, supra,* at 270." *Id.* at 108-09. (Emphasis added.)

This was followed by *Spinelli v. United States,* 393 U. S. 410, 89 S. Ct. 584, 21 L.Ed.2d 637 (1969), where Mr. Justice Harlan referred to:

"the established propositions that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, *Beck v. Ohio,* 379 U. S. 89, 96 (1964); that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, *McCray v. Illinois,* 386 U. S. 300, 311 (1967); that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, *United States v. Ventresca,* 380 U. S. 102, 108 (1965); and that their determination of

probable cause should be paid great deference by reviewing courts, *Jones v. United States*, 362 U. S. 257, 270-271 (1960)." *Id.* at 419.

In *Aguilar* the Court said:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, *Jones v. United States*, 362 U. S. 257, [80 S. Ct. 725, 4 L.Ed.2d 697,] the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see *Rugendorf v. United States*, 376 U. S. 528, [84 S. Ct. 825,] was 'credible' or his information 'reliable.' " *Id.* at 114.

Not to be overlooked in the process of evaluation is the affidavit in *Jones v. United States*, 362 U. S. 257, 80 S. Ct. 725, 4 L.Ed.2d 697 (1960), referred to by the Supreme Court in *Aguilar* as a proper affidavit.[2]

---

**2.** That affidavit was:

"Affidavit in Support of a U.S. Commissioners Search Warrant for Premises, 1436 Meridian Place, N.W., Washington, D. C., apartment 36, including window spaces of said apartment. Occupied by Cecil Jones and Earline Richardson.

"In the late afternoon of Tuesday, August 20, 1957, I, Detective Thomas Didone, Jr. received information that Cecil Jones and Earline Richardson were involved in the illicit narcotic traffic and that they kept a ready supply of heroin on hand in the above mentioned apartment. The source of information also relates that the two aforementioned persons kept these same narcotics either on their person, under a pillow, on a dresser or on a window ledge in said apartment. The source of information goes on to relate that on many occasions the source of information has gone to said apartment and purchased narcotic drugs from the above mentioned persons and that the narcotics were secreated [*sic*] in the above mentioned places. The last time being August 20, 1957.

"Both the aforementioned persons are familiar to the undersigned and other members of the Narcotic Squad. Both have

In *United States v. Harris,* 403 U. S. 573, 91 S. Ct. 2075, 29 L.Ed.2d 723 (1971), although a majority of the Court could not agree on any one opinion, its judgment sustained the validity of an affidavit which said:

"Roosevelt Harris has had a reputation with me for over four years as being a trafficker of nontaxpaid distilled spirits, and over this period I have received numerous information [*sic*] from all types of persons as to his activities. Constable Howard Johnson located a sizeable stash of illicit whiskey in an abandoned house under Harris' control during this period of time. This date, I have received information from a person who fears for their [*sic*] life and property should their name be revealed. I have interviewed this person, found this person to be a prudent person, and have, under a sworn verbal statement, gained the following information: This person has personal knowledge of and has ·purchased illicit whiskey from within the residence described, for a period of more than 2 years, and most recently within the past 2 weeks, has knowledge of a person who purchased illicit whiskey within the past two days from the house, has personal knowledge that the illicit whiskey is

admitted to the use of narcotic drugs and display needle marks as evidence of same.

"This same information, regarding the illicit narcotic traffic, conducted by Cecil Jones and Earline Richardson, has been given to the undersigned and to other officers of the narcotic squad by other sources of information.

"Because the source of information mentioned in the opening paragraph has given information to the undersigned on previous occasion and which was correct, and because this same information is given by other sources does believe that there is now illicit narcotic drugs being secreated [*sic*] in the above apartment by Cecil Jones and Earline Richardson.

"Det. Thomas Didone, Jr., ·
Narcotics Squad, MPDC.

"Subscribed and sworn to before me this 21 day of August, 1957." *Id.* at 378 U.S. 114.

consumed by purchasers in the outbuilding known and utilized as the 'dance hall,' and has seen Roosevelt Harris go to the other outbuilding, located about 50 yards from the residence, on numerous occasions, to obtain whiskey for this person and other persons." *Id.* at 575-76.

The Court of Special Appeals in this case seemed to be of the opinion that the sworn statement that the "reliably established informant" was "responsible for eleven narcotics arrests" did not adequately satisfy the test of credibility, that there should have been submitted information reflecting whether the cases had been tried or whether they had resulted in acquittals or convictions, and that the district judge should have been informed whether materials found at the time of arrest corresponded with the information supplied by the informant. It must be remembered in reviewing nearly any affidavit that there may occur to those conducting the review matters which they would have preferred to be inserted, questions they would have liked answered, just as the average third base bleacher fan or Monday morning quarterback can advise, often in substantial detail, how a baseball or football game might have been played to better advantage. The fact, however, that such questions arise in the mind of a reviewing court does not in and of itself mean the affidavit is defective, any more than the bleacher fan's adverse comment upon a manager's strategy necessarily means that the fan is right and the manager wrong, because the true test is whether it meets the standards enunciated by the Supreme Court, not whether it is drawn as the reviewing court would have preferred for it to be drawn. So long as human beings are involved, different persons will have different reactions to a given situation and often will have varying solutions to a given problem. This Court has never laid down a rule that it must be shown that convictions stemmed from an arrest in order for one informant to be deemed reliable, nor, so far as we have been able to ascertain, has the Supreme Court laid down such a rule. The reasons why the Court of Special Appeals erred in requiring

a specification of convictions are well summed up in *United States v. Gazard Colon*, 419 F. 2d 120 (2d Cir. 1969), and *State v. Cannon*, 292 A. 2d 219 (R.I. 1972). After all, a prudent officer would hardly be expected to swear under oath that a person providing information leading to an arrest was reliable if that information proved so unreliable that it was the cause of an acquittal. In *Gazard Colon* the same principles were involved as here, however the issue was not the validity of a search warrant, but the validity of a warrantless arrest and subsequent search of an automobile. The court there said:

"The appellant argues that, unless the prior information on which the agents based their conclusion as to the informer's reliability led to convictions, it may not be considered dependable. But this is not so. A variety of factors having nothing to do with the truth and dependability of the informer's story may prevent a conviction, and it would be highly technical and unnecessary to make this a prerequisite. If such previous disclosures led to arrests and the discovery of narcotics, the trier is justified in finding that the agents properly considered such past experiences with the informer as factors supporting the reliability of what the informer said to them relative to the investigation then being pursued. See Smith v. United States, 123 U. S. App. D. C. 202, 358 F. 2d 833 (1966), cert. denied 386 U. S. 1008, 87 S. Ct. 1350, 18 L.Ed.2d 448 (1967)." *Id.* at 122.

In *Cannon* the affidavit stated that information came to the affiant from "a reliable, confidential informant whose information in the past ha[d] resulted in the arrest" of certain named individuals in three separate raids. No statement was made as to whether there were convictions. The court further described the affidavit:

"Continuing, the affidavit then sets forth that the informant told the affiant on February 7, 1970 that

he was friendly with defendant; that defendant was a user of marihuana; that on February 6, 1970 defendant told the informant that he and a friend were 'going to Boston to pick up some grass that night'; that when the informant expressed a wish to purchase some marihuana defendant suggested that they meet at his residence the next morning; that he accepted that invitation and on the following day went to defendant's apartment at about 11 a.m.; that defendant went into what appeared to be his mother's bedroom, reached behind a bureau, and 'brought out a brown paper bag with a red elastic around it'; that defendant opened the bag and took from it some ' * * * plastic envelopes filled with a brownish substance and asked the informant how much he wanted to buy'; that he purchased one of those envelopes for $20; that defendant ' * * * then closed the paper bag, which appeared * * * to contain a large number of plastic bags filled with the same substance'; that he then left defendant's apartment and soon thereafter met with the affiant; that he gave the affiant 'a plastic bag containing what appeared * * * to be marihuana'; and that the affiant then 'performed a Narcodal test on the substance in the bag' and that the 'test produced a violet color, indicating the presence of marihuana.' " *Id.* at 220-21.

The court said that the affidavit "viewed as required under *Ventresca,* indicates that the informant based his tip upon his own observations and that he described to the affiant 'underlying circumstances' which clearly justified the conclusion that marihuana would be found at defendant's apartment." In passing to the issue of "whether the disclosure of the 'underlying circumstances' in [that] case provided the affiant with a substantial basis for believing that the informant, or what he had to say, was truthworthy," the court rejected a contention that *Aguilar* did "not permit a predication of 'credibility' solely upon prior

tips if those tips led only to arrests and not to convictions," it being contended by the accused that "an arrest is a 'mere accusation' which, unless followed by a conviction, is a legally insufficient verification of an informer's truthworthiness." The court said:

> "[T]here is ample authority which accepts less than prior information leading to a conviction as a good reason in law for relying upon the credibility of a nameless informant. They arrive at that conclusion because they recognize that '[a] variety of factors having nothing to do with the truth and dependability of the informer's story may prevent a conviction * * *,' United States v. Gazard Colon, 419 F. 2d 120, 122 (2d Cir. 1969), and therefore they do not tie dependability to a conviction, but insist only that the affiant's faith in the informant's dependability rests on a firm foundation. This seems to us to be a sound rule, and one which is particularly apt in a case such as this where the informant's personal observations were set out in such complete detail as to have led the magistrate almost ineluctably to the conclusion that the objects of the proposed search would be found at the place where the informant said they were.
>
> "In sum, then, our application of the relevant and controlling principles causes us to conclude that the District Court judge, when he authorized the search, was performing 'his detached function' and was not serving 'merely as a rubber stamp for the police.' United States v. Ventresca, *supra*, 380 U. S. at 109, 85 S. Ct. at 746, 13 L.Ed.2d at 689." *Id.* at 223.

In the process of futher evaluating the affidavit here, we shall examine a number of cases around the country to ascertain what has been said under similar, but not identical, circumstances.

In *United States v. Rich*, 407 F. 2d 934 (5th Cir. 1969), *cert. denied* 395 U. S. 922 (1969), a search warrant was upheld where the affiant described his confidential informant as

one "who has on repeated occasions in the past furnished reliable and credible information."

In *United States v. Kidd*, 407 F. 2d 1316 (6th Cir. 1969), the court said of the affidavit:

"He based his belief, as recited in the affidavit, 'on information furnished him by a confidential and reliable source which [had] proved to be reliable on many occasions in the immediate past;' and on the fact 'that said reputable and confidential informant stated to [him] on today that he saw on today moonshine whiskey in the possession of the [appellant] * * *.'

* * *

"Applying these criteria [of *Aguilar*] to the instant case, it is evident that the affidavit did afford the County Judge a substantial basis for concluding that the property sought was located at the premises described. The affidavit recited that the informant stated to the agent that he had seen the wh'skey on appellant's premises on the day of its execution, and the agent informed the magistrate that the informant had 'proved to be reliable on many occasions.' Accordingly, issuance of the search warrant was proper." *Id.* at 1317.

In *United States v. Hood*, 422 F. 2d 737 (7th Cir. 1970), *cert. denied* 400 U. S. 820 (1970), the court said:

"The affidavit sworn by Radde and Cole was the only material presented upon which the Commissioner could make a finding of probable cause. The affidavit contained the following allegations: that a reliable informant had seen tractors which affiants knew to be stolen on the premises of Frigid Food's terminal in Westville, Indiana; that the informant had 'on various occasions in the past furnished information leading to the recovery of similar type stolen property'; that

another informant, believed by affiants to be reliable, stated that employees of Frigid Food were engaged in stealing tractors and that he personally observed one of the stolen tractors on Frigid Food's premises; and that another informant, believed to be reliable, observed the use of many tractors known to him to be stolen in Frigid Food's operations.

\* \* \*

"With respect to the reliability of the informants, the officers swore that one of the informants had, 'on various occasions in the past furnished information leading to the recovery of similar type of stolen property.' This representation alone perhaps constitutes a sufficient underlying circumstance to meet the *Aguilar* requirement. Jones v. United States, 362 U. S. 257, 271, 80 S. Ct. 725, 4 L.Ed.2d 697 (1960). We need not rest our ruling, however, on this solitary statement. The informant's reliability was further strengthened by the hearsay information furnished by the other two informants since their statements tended to corroborate the hearsay supplied by the first informant. In Rugendorf v. United States, 376 U. S. 528, 84 S. Ct. 825, 11 L.Ed.2d 887 (1964), the Supreme Court sustained a finding of probable cause based upon an affidavit containing interrelated hearsay information from a number of undisclosed informants. The affidavit contained representations that each informant had supplied the FBI with reliable information in the past. There, as here, the interlocking nature of the secondhand information from several sources fortified the reliability of each informant.

"One difference between *Rugendorf* and the instant case must be noted. With reference to two of the informants in the case at bar the officers said only that they believed them to be reliable without

giving reasons for their belief. Were we to appraise the reliability of these two informants independently, a challenge to their reliability could properly be raised. However, these informants' reliability must be considered in the context of the information supplied by them as well as by the informant whose reliability was vouched for by reference to past occurrences. When thus considered, the insufficient basis offered in the affidavit for the reliability of the latter two informants becomes less significant and does not bar the use of their information for corroborative purposes when determining the reliability of the first informant.

"For the reasons stated, the requirements set forth in *Aguilar* are fully met and a sufficient basis existed for the Commissioner to issue the search warrant." *Id.* at 738-40.

In *United States v. Shipstead*, 433 F. 2d 368 (9th Cir. 1970), there was a contention that an affidavit was "conclusory and inadequate." The affidavit said in pertinent part:

"'And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows: Within the last two days, a reliable informant went into the above address and purchased from an occupant approximately 1 gram of methamphetamine. The informant reported that the occupants of the house were in the process of manufacturing methamphetamine. LWS This informant has supplied law enforcement officers with information over the last five or six months which has resulted in three arrests. The informant noted that within the above address were a number of test tubes, burners and other chemistry apparatus.'" *Id.* at 371.

The court said:

"The requirements of Aguilar v. Texas, 378 U. S.

108, 84 S. Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U. S. 410, 89 S. Ct. 584, 21 L.Ed.2d 637 (1969), govern the sufficiency of the affidavit. First, with respect to the requirement that facts be stated from which the magistrate may reach an independent judgment of reliability, we think the averment 'This informant has supplied law enforcement officers with information over the last five or six months which has resulted in three arrests' is legally sufficient. Convictions rather than arrests need not be alleged to support reliability. Presumably the law has been obeyed and the arrests were based on probable cause which the affidavit states was supplied, at least in part, by the informant. United States v. Colon, 419 F. 2d 120 (2nd Cir. 1969).

"We also see no merit in the suggestion that the arrests must have been for drug violations to support reliability. It may well be that a narcotic informer's experience is customarily with narcotics violations, but information leading to arrest for theft, rape, treason or any offense is just as much a statement of experience supporting reliability as an arrest for a drug offense." *Id.* at 372.

In *United States v. Buonomo*, 441 F. 2d 922 (7th Cir. 1971), *cert. denied* 404 U. S. 845 (1971), the defendant made an attack on the affidavit as failing to meet the criteria of *Spinelli.* The court said:

"Defendant complains that the affiant Chicago Police Officer William Alexander, relied on information from an informant who is described only as having supplied reliable information in the past with no details to guide the State Court judge who issued the search warrant." *Id.* at 928-29.

It pointed out that in *Aguilar* "the affiant characterized the informant only as 'credible' not as the source of reliable information in the past," and that in *Spinelli* "underlying

circumstances were lacking. There was no indication that the informant had personal knowledge. The affiant had observed the defendant engaged only in innocent activity." The court then went on to say:

> "Here Officer Alexander said the informant related being with defendant whom he knew, in defendant's home, the preceding day, where he observed a large quantity of counterfeit motor vehicle titles from Illinois, Indiana and Michigan and where he, himself, was offered such titles for sale. We find in this affidavit sufficient support for the establishment of probable cause and issuance of the warrant. See United States of America v. Ventresca, 1965, 380 U. S. 102, 109, 85 S. Ct. 741, 13 L.Ed.2d 684 where the Court holds that recital of some of the underlying circumstances in the affidavit is essential, but that where these circumstances are detailed, where reason for crediting the source of information is given and where a magistrate has found probable cause, reviewing courts should not invalidate the warrant by hypertechnical rather than commonsense interpretation. Angelini v. Illinois Bell Telephone Co., 7 Cir. 1969, 418 F. 2d 111, 115, cert. den. 397 U. S. 1040, 90 S. Ct. 1361, 25 L.Ed.2d 651." *Id.* at 929.

In *Jones v. Crouse,* 447 F. 2d 1395 (10th Cir. 1971), *cert. denied* 405 U. S. 1018 (1972), an individual had been convicted in the state courts and brought a proceeding in the federal courts for a writ of habeas corpus. There was a challenge to the validity of the search warrants involved. The court said:

> "The statements which set out the underlying circumstances in the affidavits here involved satisfy the test laid down by the Supreme Court. The material statements found in the July 18, 1966, applications are as follows: 'This is the only substantial robbery loss occurring shortly before * * * Jones was, according to several informants who

have been reliable in the past, in possession of a large sum of money, and affiant is informed by a person whose truthfulness he has reason to believe, that * * * Jones stated in connection with the sack of money he had that he shot those two "M_____ F_____'s" in the head.' The July 20, 1966, application to search the Shadybrook premises also had added to it that 'Informants states (sic) that * * * Jones had a large sum of money at his residence: * * *.'

"The above quoted statements seem to fulfill the first standards of the *Aguilar* test which requires the affiant to inform the magistrate of how the informant arrived at his conclusion. It has been held that the test is satisfied if a sufficient statement has been made which relates how the informant has gathered his information. United States v. Mendoza, 433 F. 2d 891, 894 (5th Cir. 1970). For the statements of affiant to be sufficient the test only requires that 'some' of the underlying circumstances be set out in the affidavit. The statements of affiant here, while general in nature, do relate how the informant got his information. They explain that the informants knew the money would be found where they claimed because of the bag of money Appellant had in his possession and also by his comments relating to the robbery. This is satisfactory since '(t)echnical requirements of elaborate specificity * * * have no proper place in this area.' United States v. Beck, 431 F. 2d 536, 538 (5th Cir. 1970). United States v. Ventresca, 380 U. S. 102, 85 S. Ct. 741, 13 L.Ed.2d 684 (1965).

"The second requirement of the test demands that the magistrate be informed of the underlying circumstances which led the affiant to believe the undisclosed informant was 'credible' and his information was 'reliable.' This requirement is also held to be satisfied by the statements in the affidavits. All three affidavits stated that the

evidence was presented by informers 'who have been reliable in the past * * * whose truthfulness he [affiant] has reason to believe.' These statements made by affiant created a substantial basis for crediting the hearsay, and established probable cause to search. Factual statements of past reliability are sufficient basis 'for the magistrate to gauge independently the reliability of the informer.' United States v. Mendoza, supra. The Supreme Court in the case of United States v. Ventresca, supra, stated that it is not required that the affidavit, which is based on hearsay evidence, set out that the affiant made direct personal observations so long as the affiant informs the magistrate of the underlying circumstances that led him to believe the informant ' * * * "whose identity need not be disclosed * * * was 'credible' or his information 'reliable.' " ' The Court went on to say that 'where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner,' *Id.* at 109, 85 S. Ct. at 746." *Id.* at 1398-99.

In *United States v. Guinn*, 454 F. 2d 29 (5th Cir. 1972), *cert. denied* 407 U. S. 911 (1972), two search warrants were challenged. One was based upon an affidavit executed by a sergeant in the Texas Rangers. He described the premises in some detail, said that he had received information that certain individuals were involved in conducting a gaming table, and then said:

"This source of information and different sources relate that the aforementioned persons continued to keep and exhibit these gaming tables and are at the present time keeping and exhibiting these gaming tables and same are located and situated in the room immediately adjoining the front door of said

house above described. The sources of information relate that they have been to this location on three occasions and have actually participated in the gaming above described.

"Both of the aforementioned sources of information are familiar with the undersigned and other members of the Texas Department of Public Safety.

"This same information regarding the illicit keeping and exhibiting of gaming tables above described conducted by the above mentioned individuals has been given to the undersigned and to other members of the Texas Department of Public Safety.

"To disclose the name of the aforementioned would endanger their lives. Affiant can only advise that on previous occasions these sources have given information regarding illicit gambling operations that was found, to be correct and thereby the undersigned does believe that there is now an illicit gaming operation being conducted in the above described premises which is not a private residence occupied by a family." *Id.* at 33-34.

Judge Wisdom said for that court:

"After the Supreme Court decision in United States v. Harris, 1971, 403 U. S. 573, 91 S. Ct. 2075, 29 L.Ed.2d 723, we have no doubt that the affidavit was sufficient to support a finding of probable cause.

"In Harris, a warrant authorizing a search of the defendant's premises was issued on the basis of a federal tax investigator's affidavit. The Supreme Court held the affidavit sufficient, distinguishing Aguilar v. Texas, 1964, 378 U. S. 108, 84 S. Ct. 1509, 12 L.Ed.2d 723 and Spinelli v. United States, 1969, 393 U. S. 410, 89 S. Ct. 584, 21 L.Ed.2d 637, and relying on Jones v. United States, 1962,

362 U. S. 257, 80 S. Ct. 725, 4 L.Ed.2d 697. The affidavit submitted in the instant case has the elements found to be important in *Harris* and more. First, the affidavit in the case at bar contains 'ample factual basis for believing the informant,' 403 U.S. at 579, 91 S. Ct. at 2080, even though the informant is unnamed. The informants related to the affiant that they had seen gambling tables and gambling equipment on at least three occasions while the informants were participating in the gambling. In *Harris*, the Court relied on 'personal and recent observations by an unidentified informant of criminal activity, factors showing that the information had been gained in a reliable manner.' 403 U. S. at 579, 91 S. Ct. at 2080. An important factor was the informant's statement that he had personal information of illicit whiskey because he had purchased some. Second, the affiant in the instant case states that his informants had on other occasions given information regarding illicit gambling operations that was found to be accurate. In *Harris*, the affiant merely stated that the informant was 'prudent.' See also Aguilar v. Texas, 1964, 378 U. S. 108, 84 S. Ct. 1509, 12 L.Ed.2d 723; Spinelli v. United States, 1969, 393 U. S. 410, 89 S. Ct. 584, 21 L.Ed.2d 637; Jones v. United States, 1962, 362 U. S. 257, 80 S. Ct. 725, 4 L.Ed.2d 697. Third, the affiant in the instant case stated that the information related by his unnamed informants was corroborated by other sources. This factor was absent in *Harris* but present and important in *Jones, supra*. See also Aguilar v. Texas, *supra;* Spinelli v. United States, *supra*. Finally, although the present affiant does not relate, as was the case in *Harris*, personal knowledge of the defendants' reputation, we do not read *Harris* as requiring such a statement in view of other 'substantial basis for crediting the hearsay.' 403 U. S. at 581, 91 S. Ct. at 2080. See Aguilar v. Texas, 1964, 378 U. S. 108,

114-115, 84 S. Ct. 1509, 12 L.Ed.2d 723; Jones v. United States, 1962, 362 U. S. 257, 80 S. Ct. 725, 4 L.Ed.2d 697." *Id.* at 34-35.

In *United States v. Crawford,* 462 F. 2d 597 (9th Cir. 1972), the court pointed out that the affidavit "with respect to the specificity of the information provided the magistrate who was called upon to issue the search warrant" "far surpasse[d] the affidavit of the officers in *Aguilar,*" that the defendant conceded this point, "but contest[ed] the sufficiency of the disclosure of the affidavit as to 'some of the underlying circumstances' of the unidentified informant's credibility or the reliability of his information." The informant was described as "a confidential informant [with] whom [the affiant had] worked with on previous occasions and whose prior information ha[d] proved valid . . . ." The court said:

"There is nothing in Aguilar v. Texas, supra, which gives any support to the contention that these two propositions are wholly independent of one another. We are constrained to hold they are not and that one may furnish support to the other, at least with respect to the affidavit at hand. Read as a whole, the affidavit which Agent Roberts has presented to the magistrate is as factual as that held sufficient in Jones v. United States, 362 U. S. 257, 80 S. Ct. 725, 4 L.Ed.2d 697 (1960), and furnished the magistrate with probable cause to issue the warrant. The rather detailed statement of the underlying facts which led Agent Roberts to conclude that the narcotics were where he stated them to be, lend themselves in support of the credibility of the information and the reliability of his information.

"Unlike Spinelli v. United States, 393 U. S. 410, 89 S. Ct. 584, 21 L.Ed.2d 637 (1969), the affidavit here does explain how the informant came by his information.

"It is not simply a bare statement that the Customs Agent believed the informant. The agent's

own sworn statement of his dealings with the informant, when combined with the other details in the affidavit, were sufficient to justify the magistrate's conclusion as to probable cause to issue the warrant.

"Agent Roberts might well have spelled out in more detail his contacts with the informant which caused him to conclude reliability and we would recommend greater detail in the future. Nevertheless, as was stated in United States v. Harris, 403 U. S. 573, 583, 91 S. Ct. 2075, 2082, 29 L.Ed.2d 723, 733 (1971), '. . . we decline to apply it [Spinelli v. United States, supra] to preclude a magistrate from relying on a law enforcement officer's knowledge of a suspect's reputation.' " *Id.* at 599.

In *United States v. Sultan,* 463 F. 2d 1066 (2nd Cir. 1972), an FBI agent submitted an affidavit reciting that an involuntary petition in bankruptcy had been filed by creditors of a corporation, that investigation by the affiant revealed that a certain individual was still a principal officer of the bankrupt, and that the affiant had been supplied with information by a cousin of that individual in which he said the officer of the bankrupt corporation told the cousin that on a certain day "merchandise and assets of the bankrupt" were being concealed at a specified place. The district court held the affidavit did not meet the requirements of *Aguilar,* that there be some showing of the trustworthiness of the informant himself, however, the Court of Appeals held "that the affidavit on its face fulfilled the constitutional requirement that it be issued only on a showing of probable cause."

In *Huff v. Commonwealth,* 213 Va. 710, 194 S.E.2d 690 (1973), the affidavit said in pertinent part:

"(d) That from as many as three different reliable sources, the Winchester Police Department has received information that the said James D. Huff is dealing in and with the unlawful

608

distribution of Controlled Drugs; that these informants are not known to each other as informers and each has a different connection with the said James D. Huff; and that their individual reliability is established by reason of their position in connection with the said James D. Huff, affording each of them the opportunity to learn of his activities, and by reason that much of the information given by one is corroborated by the information given by one or both of the others." *Id.* at 693 of 194 S.E.2d.

It further recited complaints of an unusual number of vehicles in the area "on certain evenings and at various hours, sometimes ranging beyond midnight," observation by the affiant of the residence and "an unusual amount of traffic in the vicinity of this address at different times during the evenings of his observation," with persons observed who went into the dwelling, stayed only a few minutes and then returned to their cars, driving off, some such individuals having been known to the affiant as "unlawful users of controlled drugs," that one of the previously mentioned reliable sources reported having overheard a conversation indicating that the accused was "making a trip that night to pick up 'the stuff,'" believed to mean "marijuana, hashish and/or heroin" and that subsequent observation of the address showed a number of people stopping at the residence, going in for a few minutes and then departing, some of those persons having "been established by the said investigation to be unlawful users of Controlled Drugs and one who has been repeatedly reported as an unlawful distributor thereof." In upholding the validity of the warrant the court said:

"The *Manley* [*v. Commonwealth*, 211 Va. 146, 176 S.E.2d 309 (1970),] list is not an exclusive or preclusive list. The informant's credibility can be established in other ways. When several informants are involved, when they are unknown to each other as informants, and when the

information furnished by one corroborates the information furnished by another, the enhanced reliability of the information lends credibility to the informants. Here, the informants' collective information was further corroborated and the informants' credibility further reinforced by information gathered from personal police surveillance. *See* Draper v. United States, 358 U. S. 307, 79 S. Ct. 329, 3 L.Ed.2d 327 (1959)." *Id.* at 694 of 194 S.E.2d.

It further said:

"Putting ourselves in the shoes of the issuing magistrate and reading the June 2 affidavit for its commonsense import, we find that Huff had been identified repeatedly by reliable informants as a distributor of controlled drugs; that he had repeatedly distributed drugs to known drug users from his residence; that his unlawful conduct was so frequent, recurrent and persistent as to form a pattern of criminal practice which provoked repeated complaints of neighbors; that this pattern had continued over a long period of time; and that it was still in process on a recent date. The commonsense conclusion to be drawn from such facts is that the pattern of criminal practice probably was yet continuing on the date of the affidavit; that it would probably continue until the warrant was executed; and that drugs would probably be found at that time in Huff's residence." *Id.* at 696 of 194 S.E.2d.

In *Manley v. Commonwealth*, 211 Va. 146, 176 S.E.2d 309 (1970), the affidavit said:

"2. The material facts constituting probable cause for issuance of the search warrant. I have received information from a reliable informant who states that he was at the apartment of Melvin Lloyd Manley, 313 West 27th Street, this past week

and he saw a large quantity of marijuana (a narcotic drug) in a chest in the front room and also some marijuana was in a dresser drawer in the middle room. My informer also states that in the past month he has smoked marijuana in the apartment * * * and in the past month he has made two purchases of marijuana from Melvin Lloyd Manley." *Id.* at 147-48.

The court said:

"We next consider whether the affidavit meets the second requirement of the test; that of credibility or reliability.

"Where the accuracy of the information received from a confidential informant is not supported by other sources known or stated to be accurate or from corroborated facts known or discovered by the affiant personally or from other official or reliable reports, the officer-affiant must present in his affidavit a substantial factual basis for crediting the informant's story.

"A mere allegation that the affiant has 'received information from a reliable informant' has been held insufficient to show that the informant was credible, or that his information was reliable. See *Riggan v. Virginia*, 384 U. S. 152, 86 S. Ct. 1378, 16 L.Ed.2d 431 (1966) (reversing 206 Va. 499, 144 S.E.2d 298).

"The most commonly accepted and approved allegation to substantiate reliability is that the informer is a person of known and proven reliability and has furnished information to law enforcement officers which has been instrumental in procuring convictions. But the credibility of the informer or the reliability of his information may be shown in other ways. Reliability may be found in an informant's statement of facts as an 'eyewitness.' *McCreary v. Sigler*, 406 F. 2d 1264, 1269, *cert. denied*, 395 U. S. 984, 89 S. Ct. 2149, 23

L.Ed.2d 773 (8th Cir. 1969). In *People v. Montague,* 19 N.Y.2d 121, 278 N. Y. Supp.2d 372, 224 N.E.2d 873, *cert. denied,* 389 U.S. 862, 88 S. Ct. 116, 19 L.Ed.2d 130 (1967), the reliability standard was said to have been met where the affidavit in sufficient detail established that the informer was speaking with personal knowledge and relating his own participation with that of the suspects in their illegal activities. In the concurring opinion of Mr. Justice White in *Spinelli,* 393 U.S. at 425, 89 S. Ct. at 593, 21 L.Ed.2d at 649, it is said:

> '* * * But if, for example, the infomer's hearsay comes from one of the actors in the crime in the nature of an admission against interest, the affidavit giving this information should be held sufficient.'

> "Here the affidavit established that the informant was stating facts based on his own personal knowledge and was relating his participation in defendant's illegal activity. His statements were admissions against interest. These facts certainly show a substantial basis for the officer-affiant to state that the informant was reliable and for a neutral and detached magistrate to conclude that the informant's information was reliable and that probable cause existed for the issuance of the warrant. Probability, and not a prima facie showing, of criminal activity is the standard for determining probable cause. Hence we hold that the reliability standard of *Aguilar* and *Spinelli* was met." *Id.* at 150-51.

In *State v. Perry,* 59 N. J. 383, 283 A. 2d 330 (1971), as the court put it:

> "[The officer's] affidavit sets forth in pertinent part:

> * * * information received by him from a reliable informant, who has in the past given

reliable information leading to arrests, that stolen property can be located at the apartment of Norman Perry, 872 Hunterdon St. 3rd floor. Property consisting of the following, monies, jewelry, doctors bag, Narcotics (barbititates [sic], and narcotic paraphernalia).

On March 20, 1968 the undersigned was informed by said informant that monies, jewelry doctor's bag, and narcotic (barbititates [sic] and narcotic paraphernalia), taken during assault and robberies, Larcenies, CC# 15720 and 15721, which proved to be in fact true. 872 Hunterdon St. is a three family house, located next to 870 Hunterdon St., which is a one family house owned by a Mr. & Mrs. O'Connell. 872 Hunterdon St. is a gray house." *Id.* at 387-88.

The Appellate Division had upheld Perry's contention that the affidavit did not show that the informant was credible and did not sufficiently state the underlying circumstances from which the informant concluded that the defendant possessed contraband. The New Jersey Supreme Court said:

"Since the affidavit showed that the unnamed informant was known to be trustworthy and the information he gave the police was of the sort which in common experience may be recognized as having been obtained in a reliable way, we hold that probable cause was established that the defendant was the possessor of stolen goods." *Id.* at 394.

There was further discussion of the significance of the inclusion in the affidavit of the references to the other criminal proceedings ("CC#15720 and 15721"). After discussion of that point the court said:

"In any event, we do not think the inclusion of CC# 15720 and 15721 materially affected a showing of probable cause. As we have said earlier in this

opinion, the tip contained diversified detail from a reliable informant which was sufficient in itself for the issuance of the search warrant.

"We hold that the affidavit upon which the warrant was issued was constitutionally sufficient." *Id.* at 395.

In evaluating the sufficiency of the affidavit to support the warrants we must bear in mind that Judge Markell pointed out for the Court in *Bratburd v. State*, 193 Md. 352, 356, 66 A. 2d 792 (1949), that in considering the warrant "we may at least consider the experience and special knowledge of the police officers who [were] applicants for search warrants," and that in *U. S. v. Harris*, Mr. Chief Justice Burger said:

"We cannot conclude that a policeman's knowledge of a suspect's reputation — something that policemen frequently know and a factor that impressed such a 'legal technician' as Mr. Justice Frankfurter [referring to *Jones v. U.S.*, 362 U. S. 257, 80 S. Ct. 725, 4 L.Ed.2d 697 (1960)] — is not a 'practical consideration of everyday life' upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip." *Id.* at 583.

Before analyzing the affidavit in this case, a word is in order relative to the matter of observation reported in an affidavit. In his concurring opinion in *Spinelli* Mr. Justice White addressed himself to the matter of detailed observations, stating:

"Detailed information may sometimes imply that the informant himself has observed the facts. Suppose an informant with whom an officer has had satisfactory experience states that there is gambling equipment in the living room of a specified apartment and describes in detail not only the equipment itself but the appointments and furnishings in the apartment. Detail like this, if

true at all, must rest on personal observation of either the informant or of someone else. If the latter, we know nothing of the third person's honesty or sources; he may be fabricating a wholly false report. But it is arguable that on these facts it was the informant himself who has perceived the facts, for the information reported is not usually the subject of casual, day-to-day conversation. Because the informant is honest and it is probable that he has viewed the facts, there is probable cause for the issuance of a warrant." *Id.* at 425-26 of 393 U. S.

This was after having previously said:

"If the affidavit rests on hearsay — an informant's report — what is necessary under *Aguilar* is one of two things: the informant must declare either (1) that he has himself seen or perceived the fact or facts asserted; or (2) that his information is hearsay, but there is good reason for believing it — perhaps one of the usual grounds for crediting hearsay information. The first presents few problems: since the report, although hearsay, purports to be first-hand observation, remaining doubt centers on the honesty of the informant, and that worry is dissipated by the officer's previous experience with the informant. The other basis for accepting the informant's report is more complicated. But if, for example, the informer's hearsay comes from one of the actors in the crime in the nature of admission against interest, the affidavit giving this information should be held sufficient." *Id.* at 425 of 393 U. S.

We turn to the case at hand knowing that although we have quoted from many cases, no case is a carbon copy of another and, therefore, any given case may be distinguished in some form or manner from another. Nevertheless, a pattern may be derived from the cases cited as to

interpretations placed upon the Supreme Court's pronouncements in the search and seizure area, a pattern which shows, in accordance with the Supreme Court's mandate in *Spinelli*, "in judging probable cause issuing magistrates [have] not [been] confined by niggardly limitations or by restrictions on the use of their common sense, . . . and that their determination of probable cause [has been] paid great deference by reviewing courts . . . ." The pattern shows a liberality generally in evaluating the judgment of the disinterested judicial officer interposed between the police and the citizenry greater than that shown in this case by the Court of Special Appeals.

The affidavit starts off with the sworn statement by the applicants that "a known and convicted Heroin user was seen at this apartment" on September 1, 1971. This can only mean seen by one of the affiants since they swore to the statement. Then follows the statement that on October 3 "a reliably established informant . . . responsible for eleven narcotics arrests" said that one of the occupants of the apartment was making trips to the District of Columbia area "twice weekly to obtain narcotics, and is transporting them back into the county," followed by the statement that the informant had seen Thompson "with 100 units of LSD," on October 2, the day before his statement to the affiant. A combination of the informant's personal observation, and the police officer's evaluation of that informant as "a reliably established informant, . . . responsible for eleven narcotics arrests" was, in our opinion, sufficient for the district judge in issuing the search warrant to rely upon that portion of the information. The affidavit did not stop there. Thus, the district judge in evaluating this information submitted was not obliged to make his determination upon that information alone. The affidavit went on to state that on the following day, October 4, information reached the officers from yet another informant who had "provided reliable information [to them] for the [preceding] six months . . . ." That person, in an admission against penal interest, stated that he had "purchased LSD and other narcotics from the Thompson [sic] in the past." That infor-

mant corroborated the first by advising that on October 3, the day after the first informant had seen Thompson with 100 units of LSD, the second informant "had seen large quantities of LSD and amphetamines in the Thompson Apt." This then is followed by information from the second informant gleaned but two days after the first information from that informant that the second informant "personally observed a large quantity of LSD, described as; White Lightnings, and Orange Paradise, in a tin can in the refrigerator in the Thompson Apt." In *Manley v. Commonwealth*, 211 Va. 146, 150, the court said that "[r]eliability may be found in an informant's statement of facts as an 'eyewitness.'" The detail relative to the tin can in the refrigerator properly could be considered and relied upon in the evaluation of the affidavit in support of the search warrant. This is then followed by the statement that Mrs. Kraft, who also resided at the address, was known by one of the officers "to be an admitted user of Heroin." Obviously, if Mrs. Kraft admitted to Deputy Sheriff Clark that she was a heroin user that would be a factor that could be considered. The affidavit is ambiguous in that regard in that it could be interpreted as meaning that her reputation in the community is that of an admitted user of heroin, but it seems clear from *Harris* that this reputation may be relied upon.

The affidavit must be considered as a whole, not in its isolated parts. As Mr. Justice Fortas observed in his dissent in *Spinelli*, it "should not be judged as an entry in an essay contest." It must be borne in mind that the average police officer out in the day to day activities of law enforcement called upon to supply information to obtain a search warrant is not possessed of all of the educational background, legal knowledge, and experience of a judge or a long time practitioner in the field of criminal law. The detail contained in this affidavit with its description by one informant of a specified number of units of LSD observed by him on one day, corroborated by a statement from a second informant that on the following day he saw "large quantities of LSD and amphetamines" in the apartment, followed by a third

observation as set forth in the statement of that second informant that three days later he saw large quantities of LSD which he proceeded to describe by type, indicating its location in the refrigerator, is substantially greater than the detail to be found in the affidavit upheld by the Supreme Court in *Harris*. Indeed, its detail is at least the equal of that in *Jones* cited with approval by the Supreme Court in *Aguilar*. Viewing the affidavit as a whole and bearing in mind the admonition of Mr. Justice Goldberg in *Ventresca* that such affidavits "must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion," the district judge issuing the warrant could well conclude that the objects of the proposed search could be found at the place where the second informant said they were. It should be remembered that the sum total of the activity observed and reported by the informants here was not innocent activity. We note that the "circumstances are detailed, ... reason for crediting the source of the information is given, and ... a [district judge] has found probable cause," conditions laid down in *Ventresca*. Accordingly, we conclude the search warrant should be permitted to stand, heeding the suggestion of the Supreme Court that "the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner" and that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."

Other points were raised by Mrs. Kraft in her appeal to the Court of Special Appeals which were not considered by that court since it believed the issue of the validity of the search warrant to be dispositive of the entire case. Upon the remand, that court will give consideration to those other points.

> *Judgment reversed and case remanded to the Court of Special Appeals for further consideration.*

618

*Levine, J., dissenting:*

Whatever may be the immediate impact of the majority's decision, its opinion will be read to mean that either of these bald statements, referring to an unnamed informer in an application for a search warrant, is alone sufficient to satisfy the "credibility-reliability" test enunciated in *Aguilar v. Texas,* 378 U. S. 108, 114, 84 S. Ct. 1509, 12 L.Ed.2d 723 (1964): "a reliably established informant, who is responsible for eleven narcotics arrests"; or an informant "who has provided reliable information ... for the past six months." With this holding I cannot agree. For reasons that follow, therefore, I respectfully dissent.

Although the majority suggests that the view it adopts here enjoys widespread support, that claim does not withstand analysis if we examine many of the cases upon which it relies.

*United States v. Harris,* 403 U. S. 573, 91 S. Ct. 2075, 29 L.Ed.2d 723 (1971), the most recent case decided by the Supreme Court on this question, is not supportive. First, whether the majority opinion there establishes a binding precedent is seriously open to question. Divided into three parts, it was adopted as the judgment of the Court by only a bare majority of five members. A total of four Justices joined in Parts I and III, and only three joined in Part II. Because a total of five joined in the judgment, the decision of the court below was overturned; but a total of four members joined in the dissenting opinion authored by Justice Harlan. Thus, no one of the three parts was adopted by a majority of the Court. *See People v. Anderson,* 389 Mich. 155, 205 N.W.2d 461, 467 (1973) and cases therein cited.

It was in Part II — joined in by only three members of the Court — that *Spinelli v. United States,* 393 U. S. 410, 89 S. Ct. 584, 21 L.Ed.2d 637 (1969), was criticized for rejecting as "bald and unilluminating" the assertion that the suspect was known to the affiant as a gambler. Thus, notwithstanding the statement in *Harris,* the holding in *Spinelli* was properly applied by the Court of Special Appeals, in this case, to the final sentence in the affidavit.

Secondly, it should be emphasized that [2] in none of the cases cited by the majority, including *Harris* itself, is it suggested that *Aguilar* and *Spinelli* have been somehow overruled; or that there has been any retreat by the Supreme Court from the principles articulated in those two cases. To the contrary, both continue to be cited extensively with approval while held to be distinguishable from the facts in *Harris*.

Thirdly, quite apart from the fact that this case is distinguishable from *Harris*, the latter can be reconciled with *Aguilar* and *Spinelli*. As Judge Thompson noted for the Court of Special Appeals, there was no "reliable information to corroborate the informants," just as there was not in *Aguilar*. In *Harris*, however, a law enforcement officer other than the affiant had previously "located a sizeable stash of illicit whiskey in an abandoned house under Harris' control during this period of time." Thus, it is perhaps arguable that the informer's tip was "corroborated by independent sources" in accordance with *Spinelli*. There, the Court considered whether, in light of the affidavit's failure there to meet the "two-pronged test" of *Aguilar*, it was sufficiently corroborated, nevertheless, by independent investigative efforts of the FBI. In concluding that it was not, the Court referred to *Draper v. United States*, 358 U. S. 307, 79 S. Ct. 329, 3 L.Ed.2d 327 (1959), as providing "a suitable benchmark" for making that determination.

*United States v. Rich*, 407 F. 2d 934 (5th Cir. 1969), cited by the majority, is an excellent case in point for demonstrating how independent investigation may enable an affidavit — in part based on information obtained from an unidentified informer — to satisfy the test prescribed in *Spinelli*. Suffice it to say that *Rich*, being clearly distinguishable, provides no support for the majority opinion.

Similarly, *United States v. Crawford*, 462 F. 2d 597 (9th Cir. 1972), cited by the majority for support, fails to do just that, and is distinguishable. For example, the suspects [of narcotics violations] were alleged to be "presently lodged" in the residence of one of the confidential informants.

In *United States v. Hood,* 422 F. 2d 737 (7th Cir. 1970), it was alleged by the affiant that "one of the informants had, 'on various occasions in the past furnished information leading to the recovery of similar type of stolen property.'" This underscores the very point at issue here. The Court of Special Appeals, correctly, in my view, has consistently stressed the distinction between informers whose information has led merely to arrests — as in this case — or convictions. The rationale for this distinction is too clear to require extended comment. One bespeaks "credibility-reliability" of an informer, the other does not. I do not, however, suggest that information leading to a conviction is a *sine qua non* for crediting an informer. The point to be emphasized is that where, as in *Hood, supra,* information previously furnished by an informer leads to the recovery of stolen property, it suggests "probability" in much the same manner as a conviction does.

The facts in *United States v. Sultan,* 463 F. 2d 1066 (2d Cir. 1972), are also distinguishable from those here, and call into question whether *Aguilar* was even applicable there. Clearly, it affords no support for the majority here. There, the informer, *a cousin of the suspect,* told a federal agent where merchandise was being illegally concealed from the Trustee in Bankruptcy. As Judge Moylan said, while concurring in *Dawson v. State,* 14 Md. App. 18, 34, 284 A. 2d 861 (1971): "That a very different rationale exists for establishing the credibility of named citizen-informers than for establishing that of the more suspect and anonymous police-informer is widely acknowledged in recent case law." There can be little doubt from reading the affidavit here that the informers were of the "more suspect and anonymous" type, rather than "citizen-informers."

*State v. Cannon,* 292 A. 2d 219 (R.I. 1972) does not, as contended, support the majority. While it speaks of an informer whose information previously led to arrests, the affidavit details those arrests by listing the names of those arrested, as well as the date, place, and the charges lodged against them. The case aptly demonstrates how detail may be employed to satisfy the "credibility-reliability prong."

In *United States v. Gazard Colon*, 419 F. 2d 120 (2d Cir. 1969), which involved a warrantless arrest, narcotics agents, under circumstances reminiscent of the facts in *McCray v. Illinois*, 386 U. S. 300, 87 S. Ct. 1056, 18 L.Ed.2d 62 (1967), made independent observations after receiving information from an informer, but prior to arresting the suspect. Those independent observations of the narcotics agents amply reinforced the informer's information so as to provide probable cause for the arrest.

Finally, *Huff v. Commonwealth*, 213 Va. 710, 194 S.E.2d 690 (1973), presents a situation in which the observations by police — all detailed in the affidavit — supply the independent corroborating evidence found to be lacking in the FBI surveillances chronicled in the *Spinelli* affidavit.

In sum, each of the cases mentioned above — all relied upon by the majority — can be squared with the decision below and my reading of *Aguilar, Spinelli* and *Harris*.

Upon what, then, does the majority rest its holding that the affidavit here satisfies the "credibility-reliability prong?" First, it relies upon the initial sentence, "Peter Fletcher, a known and convicted Heroin user was seen at this apartment." Although the Court of Special Appeals was unwilling to assume — correctly, I think — "that the observer was one of the affiants [since, for example,] the affiants could well have received this information from others," the majority is quite willing to infer from the same statement that it "can *only* mean seen by one of the affiants." (emphasis added).

But even apart from that unwarranted assumption, the majority errs in even considering that sentence while applying the "credibility-reliability" test of *Aguilar* to the informers. It is the second prong of *Aguilar*, whether there are "underlying circumstances from which the officer concluded that the informant ... was 'credible' or his information 'reliable' " that confronts us here. And I fail to see how the presence of a known drug user, even if observed by the affiant, elevates the *credibility of the informer* to the level prescribed by *Aguilar*.

Secondly, apparently sensing that the reference to the first informer as having been "responsible for eleven narcotics arrests" is insufficient, the majority infuses it with credibility derived from the remainder of the affidavit "as a whole." In doing so, it paints with too broad a brush.

The affidavit says, concerning the second informer, merely that he "has provided reliable information to this Dept. for the past six months." This, even more profoundly than the description of the first informer, exemplifies the kind of conclusory statement which the Supreme Court refused to sanction in *Aguilar* and *Spinelli*. To credit this conclusion does violence to the central theme expressed in *Aguilar* that "the court must still insist that the magistrate perform his 'neutral and detached function and not merely serve as a rubber stamp for the police.'" 378 U. S. at 111.

Thirdly, the majority proceeds upon the erroneous premise that the information *provided by the informers* can be considered in testing their veracity. Nothing in *Aguilar*, *Spinelli* or *Harris* supports that proposition. As Justice Harlan, dissenting in *Harris*, so aptly stated:

"It is not possible to argue that since certain information, if true, would be trustworthy, therefore, it must be true. The possibility remains that the information might have been fabricated. This is why our cases require that there be a reasonable basis for crediting the accuracy of the observation related in the tip. In short, the requirement that the magistrate independently assess the probable credibility of the informant does not vanish where the source of the tip indicates that, if true, it is trustworthy." 403 U. S. at 592.

Judge Will, dissenting in part from the decision in *United States v. Hood, supra*, put it more succinctly in referring to the same type of "bootstrap" reasoning adopted by the majority there when he stated:

"But nothing plus nothing plus nothing is still nothing." 422 F. 2d at 744. While we are not called upon to so decide, the

information attributed to the informers in the affidavit here goes no further than to possibly meet the first part of the "two-pronged test."

All that remains in the affidavit is the statement that the "Kraft subject . . . is known by Dept. Clarke to be an admitted user of Heroin." Reliance for crediting that statement is founded on *Harris*, and it is indeed misplaced. To be sure, Chief Justice Burger, for the Court, in Part II of his opinion refers to a similar statement there as one upon which an "officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip." 403 U. S. at 583. That statement, taken at face value, might well cast doubt upon what the Court had previously said in *Spinelli*, were it not that only three members of the Court, as we noted earlier, joined in Part II.

In *Spinelli*, Mr. Justice Harlan stated for the Court what I still regard as the controlling principle:

> "[T]he allegation that Spinelli was 'known' to the affiant and to other federal and local law enforcement officers as a gambler and an associate of gamblers is but a bald and unilluminating assertion of suspicion that is entitled to no weight in appraising the magistrate's decision. *Nathanson v. United States*, 290 U. S. 41, 46, 54 S. Ct. 11, 12, 78 L. Ed. 159 (1933)." 393 U. S. at 414.

The statement here, regarding the Kraft subject being "an admitted user of Heroin" is further attenuated by the concession of the majority that it is ambiguous in being subject to the interpretation that she admitted her drug use to some unnamed person other than the affiant.

The affidavit here clearly violates the fundamental precept enunciated in *Aguilar* by failing to reflect "some of the underlying circumstances from which the officer concluded that the [informants were] 'credible' or [their] information 'reliable.'" 378 U. S. at 114. As such, it permitted the necessary inferences to be drawn by the police rather than by a "neutral and detached magistrate." I think the Court of Special Appeals correctly decided this case and, for

the reasons outlined above, I would affirm its judgment. I am authorized to state that Chief Judge Murphy and Judge McWilliams concur in this opinion.