## GEORGE LOMAX *v.* STATE OF MARYLAND

[No. 198, September Term, 1972.]

*Decided January 4, 1973.*

The cause was argued before THOMPSON, GILBERT and SCANLAN, JJ.

*Henry L. Belsky* for appellant.

*James G. Klair, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, J.*

*Thomas Caskey, Assistant Attorney General, Milton B. Allen, State's Attorney for Baltimore City*, and *Stephen Snyder, Assistant State's Attorney for Baltimore City*, on the brief, for appellee.

SCANLAN, J., delivered the opinion of the Court.

Appellant, George Lomax, was convicted in the Criminal Court of Baltimore (Liss, J.) of possession of heroin and sentenced to five years imprisonment. The incriminating evidence against him was obtained as a result of a search warrant, the probable cause for the issuance of which appellant unsuccessfully challenged below and again attacks on his appeal to this Court. The search was conducted on April 24, 1970. The affidavit which served as the basis of the search warrant was dated April 23, 1970. It reads:

> "I, Off. Michael Gray S.E.D., have been a policeman in Baltimore City for the past 3½ years and have for the past year have been assigned to plainclothes to work in the area of Narcotic enforcement. I have attended the two (2) week school given by the Federal Bureau of Narcotics in Washington D. C. I have laid over one hundred (100) charges for violations of the narcotic laws.
>
> "Having received information from a reliable informant, whose reliability has been established in the past by information which led to the arrest and indictment of four (4) persons for burglary, that the occupant of 130 North Aisquith Street Apt. 11J was allowing certain heroin sellers (dealers) use her apt. to sell and use narcotics. One of these dealers was known to my informant as "Pee Wee"—real name Reginald Conner. We, also, received information from another reliable informant, whose reliability has been established by information which led to the arrest & indictment of two (2) per-

sons for possession of heroin that several 'dealers' were using the premises of Laura Smith at 130 North Aisquith St. Apt. 11J to sell & use narcotics.

"I, Off. Gray, on 22 April '70 at 12:10 P.M. went to the project office bldg. in the 100 blk. N. Aisquith St. and talked to the supervisor of the 130 N. Aisquith project bldg. and asked if they had received complaints about narcotic activity from tenants of the 130 N. Aisquith Bldg. and I was informed that they had received well over twenty (20) complaints that narcotics were being sold from Apt. 11J of that bldg. Reginald Conner alias "Pee Wee" was arrested by Off. Edward Crowder & myself on 19 March '70 waiting for the elevator in the 130 N. Aisquith St. Bldg. & he had 15 glassine bags of heroin in his possession.

"In light of all the above and due to my experience I believe there to be narcotic activity in 130 N. Aisquith St. Apt. 11J."

It is to the affidavit alone that we must look in determining whether probable cause existed for issuance of the warrant. *Smith v. State,* 191 Md. 329, 62 A. 2d 287 (1948); *Dawson v. State,* 11 Md. App. 694, 703, 276 A. 2d 680 (1971). However, the validity of the search warrant must be determined in the light of established propositions which the Supreme Court affirmed in *Spinelli v. United States,* 393 U. S. 410, 419 (1969) and to which this Court has specifically adverted in several of our opinions, most recently in *Hudson v. State,* 16 Md. App. 49, 56-57, 294 A. 2d 109 (1972), where we set them out as follows:

"1) the standard of probable cause is only the probability and not a *prima facie* showing, of criminal activity;

2) affidavits of probable cause are tested by much less rigorous standards than those

governing the admissibility of evidence at trial;

3) issuing judges are not to be confined to niggardly limitations or by restrictions on the use of their common sense in judging probable cause;

4) the determination of probable cause by the issuing judge should be paid great deference by reviewing courts."

These propositions provide the general guidelines to which we have adhered in applying the more detailed rules governing probable cause for the issuance of a search and seizure warrant. In *Hudson v. State, supra,* and earlier in *Moore v. State,* 13 Md. App. 711, 715-16, 284 A. 2d 614 (1971), we said:

" 'Thus probable cause may be shown in the affidavit by a statement by the affiant 1) of his direct observations, or 2) of information furnished the affiant by someone else, named or unnamed, or 3) of a combination of the direct observations of the affiant and hearsay information furnished him. In each instance the issuing judge must have before him enough circumstances to enable him to determine the trustworthiness of the information, *for he must not only evaluate the adequacy to show probable cause of the facts and circumstances set out in the affidavit but he must also evaluate the truthfulness of the source of the information comprising those facts and circumstances.* Due to the infinite variety of human conduct, the sufficiency of any affidavit must necessarily depend upon the particular facts and circumstances in it contained.' " *Hudson* at 58-59. (emphasis added).

As in *Hudson v. State, supra,* probable cause was shown in the affidavit by a combination of hearsay information received from two unnamed informants, in-

formation furnished by a citizen-informant, and an independent investigation conducted by the police.

As stated, the affiant received information concerning narcotics sales in the apartment in question from three different persons. The credibility of the first, the building supervisor, a citizen-informant, presents little problem. *Hudson v. State* at 59; *Dawson v. State,* 14 Md. App. 18, 34, 284 A. 2d 861 (1971). Experience supports the belief "that the ordinary citizen who has never before reported a crime to the police may, in fact, be more reliable than one who supplies information on a regular basis." *United States v. Harris,* 403 U. S. 573, 599 (1971) (Harlan, J. dissenting). The underlying basis of the information as to sales of narcotics which the building supervisor imparted to Officer Gray consisted of "numerous complaints" which the latter had received from his tenants. Recurring complaints by tenants, who ordinarily must be assumed to be interested in preserving the peace, safety and reputation of their dwelling places, rise above the reliability level of the "casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli v. United States, supra* at 416. The information furnished by the building supervisor, although hearsay in its origins, was reasonably trustworthy information, "obtained in a reliable way," *id.* at 417, and transmitted to the affiant by a presumptively truthful informant. *United States v. Ventresca,* 380 U. S. 102, 111 (1965) ; *Dawson v. State, supra* at 33. In our view, this information satisfied the two-pronged (basis of knowledge and reliability) test of *Aguilar v. Texas,* 378 U. S. 108, 114 (1964).

Unlike the building supervisor, the credibility of the two unnamed police informants mentioned in the affidavit cannot be so easily inferred. The affidavit must show "some of the underlying circumstances from which the affiant could be reasonably justified in a belief that the hearsay information was reliable or the informant was credible." *Buckner v. State,* 11 Md. App. 55, 61, 272 A. 2d 828 (1971). However, such circumstances exist

here. The credibility of the two unidentified informants was corroborated through independent police verification of some of the information which they had imparted to the authorities. *Draper v. United States,* 358 U. S. 307 (1959) ; *Dawson v. State, supra* at 707. The tip supplied by the first informant to the effect that the premises at 130 N. Aisquith Street, Apartment 11J, were being used by certain heroin dealers "to sell and use narcotics", was verified in part when, one month before the warrant was issued, the police arrested one of the suspected dealers identified by this informant. The arrest took place in the apartment building at 130 N. Aisquith Street. At the time of his apprehension, this narcotics dealer had fifteen (15) glassine bags of heroin in his possession. The arrest of the narcotics dealer also assists in establishing the credibility of the second informant who had also told the police that narcotics dealers were using the premises in question "to sell & use narcotics."

The credibility of the two police informants received additional confirmation when Officer Gray, through his own independent investigation, learned from the supervisor of the apartment building, just two days before the warrant was issued, that the supervisor had received numerous complaints that narcotics were being sold in the apartment in question.

The arrest of the narcotics dealer in the apartment and the information secured through Officer Gray's interrogation of the building supervisor buttress the conclusionary allegations of the informants' credibility set out in the affidavit. There, they are identified as persons who had given information previously leading to several arrests and indictments.[1] Likewise, we believe

---

1. The fact that two informants supplied the police with essentially the same information concerning the sale of narcotics at the premises in question should also be considered. This dual source enhances the reliability of the information furnished by each informant. *United States v. Hood,* 422 F. 2d 737, 739 (7th Cir. 1970), *cert. denied,* 400 U. S. 820 (1970) ; *Rugendorf v. United States,* 376 U. S. 528, 532 (1964) ; *Kane v. State,* 12 Md. App. 466, 475, 280 A. 2d 9 (1971).

that the "independent investigative efforts" of the police, as stated in the affidavit, also adequately resolves doubts which otherwise might be raised under the *Aguilar* test as to the reliability of the information supplied by the informants. *Spinelli v. United States, supra* at 417. "We think that in all the circumstances shown in the affidavit, the information received from the unnamed informer(s)" provided reasonable assurance of "trustworthiness and their reliability was sufficiently established." Thus, the information provided by the unidentified informants "may properly be considered in determining the existence of probable cause." *Hudson v. State, supra* at 60.

This case, as the trial judge acknowledged, is a "very close" one. Close cases, however, are not infrequent occurrences in the area of search and seizure, a field in which it is extremely difficult, if not impossible, to reconcile the pertinent decisions. The way has not been straight but tortuous, sometimes labyrinthine. Any threads of consistency in rationale and result which may run through the controlling cases are not easily discernible. Compare, for example, *Spinelli v. United States, supra,* with *United States v. Harris, supra.* Thus, in the case at bar, it can be very plausibly argued that each separate item of information supplied by the three informants, including the building supervisor, is insufficient, standing alone, to erect a predicate of probable cause. It is our judgment, however, that the combination of these items of information, plus the arrest of the narcotics dealer in the apartment building, suffice to establish probable cause. Mathematical principles and propositions of pure logic maintain that the whole cannot exceed the sum of its individual parts. Yet in the law, whose life has not been logic but experience, a different result often obtains. Items of information or of evidence when assembled in combination frequently can provide a basis for a judgment or decision which could not be reached by a court confined solely to compartmentalized, disparate consideration of those items. This, for the rea-

sons we have set forth, is such a case. We are confirmed in that conclusion by the applicable admonition of *United States v. Ventresca, supra,* that:

> "If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants * * * must be tested and interpreted by magistrates and courts in a common-sense and realistic fashion. * * * Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." 380 U. S. at 108.

*Judgment affirmed.*