GUY CHARLES THOMPSON, JR. *v.*
STATE OF MARYLAND

[No. 303, September Term, 1972.]

*Decided January 8, 1973.*

The cause was argued before THOMPSON, MOYLAN and DAVIDSON, JJ.

*Gerald A. Kroop* for appellant.

*David B. Allen, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Mark Van Bavel, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

This case prompts a consideration of the long-neglected alternative spur of *Aguilar's* [1] "veracity" prong. The two-pronged test of *Aguilar* established constitutional guidelines for measuring hearsay information in a probable cause setting (either as predicate for a warrant or for acting, under appropriate circumstances, without a warrant). The "basis of knowledge" prong requires of him who would act upon hearsay, a knowledge "of some of the underlying circumstances" upon which the informant based his conclusion. The "veracity" prong is in the alternative. It requires of him who would act upon the hearsay, a knowledge of "some of the underlying circumstances" which leads to the conclusion that the informant is 1) "credible or 2) his information reliable."

Most of the case law treats exclusively of the "credibility" aspect of the "veracity" prong. In *Dawson v. State,* 14 Md. App. 18, 35 (concurring opinion), we despaired at the failure of the Supreme Court to make clearer the meaning of the phrase "or his information reliable":

"The intrinsic approach to veracity is an alter-

---

1. *Aguilar v. Texas,* 378 U. S. 108.

native one in that *Aguilar* commands that the magistrate 'be informed of some of the underlying circumstances from which the officer concluded that the informant' was 'credible' OR 'his information reliable.' The Supreme Court, ironically, has never discussed the impact of the language, 'or his information reliable.' Arguably, supporting facts which show that an informant's information is 'reliable' thereby show also that the informant is, on that occasion at least, 'credible.' Unless the alternative phraseology is meaningless, the informant's 'credibility' would seem to involve his inherent and ongoing character as a person—his reputation and demonstrated history of honesty and integrity. Informational 'reliability,' as something separate from its source's credibility, would seem to involve some circumstances assuring trustworthiness on the particular occasion of its being furnished. Although hypothetical examples are difficult to conjure up in the context of police informers, it would certainly follow that any circumstance qualifying as a trustworthy exception to the hearsay rule in a trial setting would, *a fortiori*, qualify in a probable cause setting. Fortunately, it is not this aspect of *Aguilar's* veracity prong which is before us in the case at bar."

This aspect of *Aguilar's* "veracity" prong is now before us. The present case, by way of illustration, will help to fill that former void.

The appellant, Guy Charles Thompson, Jr., was convicted in the Criminal Court of Baltimore by Judge J. Harold Grady, sitting without a jury, of possession of heroin. He was sentenced to a prison term of four years. On December 22, 1970, the appellant was arrested in his automobile and the automobile was searched. The search uncovered a brown paper bag containing 143 glassine

bags of heroin. The conviction rises or falls on the legitimacy of that automobile search, which is the sole issue presented by the appellant on this appeal.

Counsel have been helpful in narrowing the issue. It is agreed that we are dealing with a warrantless search of the appellant's automobile under the so-called "automobile exception" to the warrant requirement. It is further agreed that there is no problem as to exigency. The only issue is whether Officer Donald Schline of the Narcotics Unit of the Baltimore City Police Department had probable cause to believe that the automobile contained evidence of narcotics violations. The adequacy of that probable cause, in turn, depends upon whether Officer Schline was entitled to credit certain hearsay information.

At approximately 12:30 p.m. on December 22, 1970, Officer Schline received information from one of his regular informants, which precipitated his search of the appellant's automobile within the hour. Officer Schline furnished to the trial court a substantial basis for believing in the credibility of this regular informant. The appellant agrees that the credibility of this primary informant is established beyond dispute. The rub is that this credible, primary informant passed on to Officer Schline information which he had, in turn, received from another unnamed person. We are dealing with hearsay twice compounded. We are dealing with the type of problem referred to in *Dawson v. State,* 11 Md. App. 694, 701, n. 3, although we were discussing it there in a search warrant setting:

> "If the informant himself is offering not direct observation but hearsay twice compounded, the entire evaluation process must begin again at a second level of remoteness. The primary informant must then pass along sufficient data in sufficient detail so that the magistrate may again judge for himself 1) the credibility of the secondary informant and 2) the worth of that secon-

dary informant's information. If, in some extreme hypothetical situation, the secondary informant should be a mere conduit for hearsay thrice compounded from a tertiary informant, the evaluation process is escalated to yet another level of remoteness and so on ad infinitum. *Spinelli,* at 416 (majority opinion by Harlan, J.) and 423-425 (concurring opinion by White, J.). Ultimately, the magistrate must have the benefit of someone's first-hand observation in order to evaluate the worth of the information and must have also satisfactory proof of the credibility of every person involved in the chain of transmission of the information from the initial observer to the magistrate himself."

The credibility of the primary informant—Officer Schline's regular informer—is granted. That credibility is indispensable, since the primary informant is a conduit for the information from its more remote source back to Officer Schline. The credibility of that primary informant is not enough, however, since he is but the conduit. In addition, Officer Schline must have had, and must have passed on to the trial court, a basis for crediting that more remote, secondary informant. *Kapler v. State,* 194 Md. 580, 587-588; *Bolesta v. State,* 9 Md. App. 408, 412-416; *Mullaney v. State,* 5 Md. App. 248, 252-256. With this analysis in mind, we look to the events of December 22.

Officer Schline's informant was, or posed as, a narcotics addict and regular purchaser of narcotic drugs. During the late morning of December 22, he went to the 700 block of Newington Avenue to buy from his seller some drugs, which he intended to pass on to Officer Schline. This unidentified seller, who is the secondary informant now under analysis, informed his purchaser that he did not then have any drugs to sell. He urged his purchaser to return at around 1 p.m. He indicated that he would then have drugs to sell "when Guy made the

drop." A "drop" is a recognized term in the jargon of the junkie for a delivery of drugs by an upper-echelon distributor to a street dealer.

From his own knowledge, the primary informant—Officer Schline's regular informer—was able to specify that "Guy" was the appellant Guy Thompson and that he would be driving a 1965 Pontiac with Maryland tag number FG 5147. The primary informant's own information, however, went only to the identity of "Guy" and not to his anticipated criminal activity at or about 1 p.m. on December 22. That information came only from the more remote, secondary informant. With respect to that secondary informant, it is agreed that he spoke from first-hand knowledge. *Aguilar's* "basis of knowledge" prong is not in issue. Our single problem is to measure this secondary informant—this unnamed street seller— against *Aguilar's* "veracity" prong. Was there reason to believe that he was "credible" or that his information was "reliable?"

In terms of our now classical mode of measuring an informant by the credibility aspect of *Aguilar's* "veracity" prong, this unnamed street seller could not pass the test. Officer Schline did not know who he was or anything at all about him. No information was furnished as to whether the street seller had ever passed on information before, which had turned out to be correct. His inherent credibility—his integrity—his status as a truth speaker —is a total and unrelieved mystery. This aspect of traditional Aguilarian analysis yields absolute zero.

The "veracity" prong of *Aguilar* is, however, significantly phrased in the disjunctive. Even knowing nothing about the inherent credibility of a source of information, we may still ask, "Was the information furnished under circumstances giving reasonable assurances of trustworthiness?" If so, the information is "reliable," notwithstanding the ignorance as to its source's credibility.

Although the rationale was not always neatly pigeonholed for convenience of later analytic synthesis, and al-

though additional reasons based on practical necessity were sometimes advanced, the decisions of the Court of Appeals and of this Court have long portended that hearsay information may be furnished under circumstances reasonably insuring its reliability, even absent any knowledge as to its source's credibility. *Jones v. State,* 242 Md. 95, 100-101 (reliable information furnished by a rape victim, a named witness, and several other unidentified witnesses) ; *Taylor v. State,* 238 Md. 424, 429-431 (reliable information furnished by an unidentified witness to a robbery) ; *Evans v. State,* 11 Md. App. 451, 455-459 (reliable information furnished by an unknown robbery victim) ; *Ward v. State,* 9 Md. App. 583, 590-592 (reliable information furnished by two cleaning maids at a motel who observed narcotics in a motel room) ; *Knight v. State,* 7 Md. App. 282, 285-286 (reliable information furnished by two witnesses to a crime) ; *Edwards v. State,* 7 Md. App. 108, 112, f. 1 (reliable information furnished by one confessing to a crime, in the course of which confession he implicated another) ; *Grimm v. State,* 6 Md. App. 321, 326-328 (reliable information furnished by a taxicab driver) ; *Boone v. State,* 2 Md. App. 80, 93 (reliable information furnished by one confessing to a crime, which confession implicated another).

We believe a like reasoning to apply to the unnamed street seller at bar. Though from the criminal milieu, to be sure, he was not, wittingly at least, working with the police. He was not in the position of "the common informant. . . hidden behind a cloak of anonymity" who more often than not "is paid or provides information in exchange for immunity from prosecution for his own misdeeds." *People v. Glaubman,* 485 P. 2d 711, 716-717 (Colorado, 1971). This street seller was, so far as he knew, engaged in a purely commercial venture for his own profit. He was dealing with a regular and presumably valued customer. Being unable initially to satisfy his customer's demand, it was to his every advantage to assure the prompt return of that customer as soon as fresh merchandise was available for sale. He simply had

no purpose in misleading his own clientele. The circumstances in which the seller passed on the information to a customer and confidant are replete, we think, with reasonable assurances of trustworthiness. Upon our constitutionally-mandated independent review, we believe the information furnished by this secondary informant to have been reliable, notwithstanding his utter lack of demonstrated credibility.

Believing the reliability of the information to have been intrinsically established by the circumstances in which it was transmitted, it is unnecessary to recite several other items of Officer Schline's own knowledge and direct observation which would have lent extrinsic support, were such extrinsic support necessary.

*Judgment affirmed.*