ELLIS HARLEY BARBER *v.* STATE OF MARYLAND

[No. 230, September Term, 1974.]

*Decided December 17, 1974.*

The cause was argued before THOMPSON, GILBERT and DAVIDSON, JJ.

*Paul D. Wright, III, Assigned Public Defender,* with whom was *Edward P. Camus, District 5 Public Defender,* on the brief, for appellant.

*Bernard A. Raum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Alan E. D'Appolito, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Ellis Harley Barber, appellant, was convicted of grand larceny by the Circuit Court for Prince George's County. He contends on appeal that the State failed to establish that the value of the stolen goods exceeded $100.00; therefore, his motion for acquittal should have been granted. We agree. We shall also discuss the validity of a search and seizure and the admissibility of certain evidence for the guidance of the trial court on retrial.

## I Value

The record shows that the only goods stolen were a box of pills and a diamond ring. The State offered no evidence concerning the value of the pills. As to the diamond ring, during direct examination, the State's Attorney asked the owner, "Can you state for the benefit of the Court and the jury what the fair market value of this ring is? " A. "I would say approximately a hundred and fifty dollars." On cross-examination the owner testified she did not know the fair market value, and that the ring was a gift.

Although the law is well established that an owner is presumed to know the market value of his possessions and is

permitted to give his opinion thereon, when the record shows that he does not in fact know the market value, his opinion, even though perhaps in some cases admissible, is not alone sufficient to establish value. This is especially true where the value of the stolen goods barely exceeds $100, the amount which must be proven to support a charge of grand larceny. Md. Code, Art. 27, § 340. The Court of Appeals reviewed this question carefully in *Cofflin v. State,* 230 Md. 139, 142, 186 A. 2d 216 (1962) and stated:

"It is well settled in this State that an owner of personal property in common use may express an opinion as to its value without qualification as an expert. *Bresnan v. Weaver,* 151 Md. 375, 378; *Bailey v. Ford,* 151 Md. 664, 667; *Casualty Ins. Co. v. Messenger,* 181 Md. 295, 302; *Jackson v. Linthicum,* 192 Md. 272, 276. Cf. *State Roads Com. of Md. v. Novosel,* 203 Md. 619, 624. The case of *Mutual Fire Ins. Co. v. Owen,* 148 Md. 257, 267 is not here in point. The testimony of the owner's wife was admitted on the theory that she had taken an inventory of the goods, in her husband's store, at cost, based on actual records and in a few instances on wholesale catalogue prices. The rule applies in criminal as well as civil cases. *Jewell v. State,* 216 Md. 110, 112; *Shipley v. State,* 220 Md. 463, 466; *Benton v. State,* 228 Md. 309, 311. The rule is almost universally recognized. See Underhill, *Criminal Evidence* (5th ed.) § 603 P. 1474; Wigmore, Evidence (3rd ed.) § 716; 2 Wharton, *Criminal Evidence* (12th ed.) § 550. The cases are collected in an exhaustive note 37 A.L.R.2d 967. Wigmore, in an often quoted passage, seems to take the position that an owner is qualified *per se,* and that any lack of knowledge goes only to the weight of the evidence. But many courts have held that ownership establishes a rebuttable presumption of knowledge. See *Sykes v. Wood,* 91 So. 320 (Ala.), and cases collected in 37 A.L.R.2d. *supra,* p. 984 *et seq.* It has been held that the rule does not rest on

the fact that the owner has title, but rather on the fact that ordinarily an owner knows the property intimately and is familiar with its value. *Menici v. Orton Crane & Shovel Co.*, 189 N.E. 839 (Mass.). See also *Shea v. Hudson,* 165 Mass. 43, cited in both the *Bresnan* and *Bailey* cases, *supra,* in 151 Md., and in the *Messenger* case as well. Thus, an owner who has purchased the property in question or similar property would normally have some knowledge of its market price and present condition. In *Rubin v. Town of Arlington,* 99 N.E. 2d. 30 (Mass.) it was held that the qualification of an owner presented a preliminary question of fact for the trial judge, and this is the rule in other States. Thus, if it is demonstrated that the owner possesses no knowledge whatever of the market price and condition of the article in question, his testimony may be inadmissible. In *Shipley v. State, supra,* we noted that it was held in *Narango v. State,* 87 Tex. Crim. 493, 222 S. W. 564, that a bailee may likewise testify to value without qualification, but we found it unnecessary to pass on the point in that case."

The Wigmore view referred to by the Court of Appeals in *Cofflin* seems to have been modified in later editions. 3 *Wigmore on Evidence* § 716 (Chadbourn rev. 1970) states as follows:

"*Knowledge of value standard; what tests are proper? (continued): Personal-property value.* Here the general test, that *any one familiar* with the values in question may testify, is liberally applied, and with few attempts to lay down detailed minor tests.[1]

"The *owner of an article,* whether he is generally familiar with such values or not, ought certainly to be allowed to estimate its worth; the weight of his testimony (which often would be trifling) may be left to the jury; and courts have usually made no objections to this policy.[2]

"However, where it appears (either expressly or by reasonable inference) that the owner in fact lacks knowledge of the particular value at issue, his opinion may be ruled inadmissible.[3]

"The general rule that any owner may evaluate his own property does not apply to one who merely holds legal title and has not enjoyed the usual incidents of personal ownership.[4] "

In § 716, note 2, a number of cases are cited which hold that even though such evidence may at times be admissible, it is insufficient alone to sustain a finding of value. Other notes in the quote cite case authority for the point discussed.

In *Shipley v. State*, 220 Md. 463, 467, 154 A. 2d 708 (1959), the Court pointed out a further refinement of the rule pertaining to proof of value in a grand larceny case as follows:

"In such a case as this, where a portion of the stolen goods was before the trier of facts, together with a detailed list of the other clothing stolen, and the goods stolen were ordinary articles of clothing, the court or jury weighing the evidence could value the goods without the aid of expert testimony. 20 Am. Jur., *Evidence* § 894 (1939); *State v. Peach*, 70 Vt. 283, 40 A. 732; 3 Underhill, *Criminal Evidence* § 720 (5th Ed., 1957). Cf. 32 C.J.S., *Evidence* § 545 at 280 (1942). We think the lower court could reasonably infer from the clothing before it and from the description of the other articles stolen, and from the fact that the average value of each article need be only $1.45 for the total to exceed $100, that goods of a value in excess of $100 actually were stolen."

This refinement is, of course, no help to us in deciding the instant case because it is apparent that a jury cannot adequately determine the value of a diamond ring or a bottle of medicine simply by looking at them. We, therefore hold that the testimony of the owner was not sufficient in and of itself to establish that the goods taken were worth

more than $100.00. We have held an owner's statement of value insufficient to support a conviction for grand larceny when it was shown he did not know the market value. *Mason v. State*, 9 Md. App. 61, 262 A. 2d 576 (1970), *cert. denied*, 258 Md. 729; *Gazaille v. State*, 2 Md. App. 462, 235 A. 2d 306 (1967). *Compare Jones v. State*, 6 Md. App. 344, 251 A. 2d 46 (1969).

## II  Seizures

Detective David Van Dyke of the Prince George's County Police testified that on April 19, 1973, he received a telephone call from an informant stating that the appellant, Pinkey Barber, and George Vermillion had just broken into an apartment on 85th Avenue in New Carrollton; that they were in a gray '56 Chevrolet; and that they were still in the area.

Detective Van Dyke relayed the information he had received to Detective Mark Nelson who immediately went with Detective McLamb to the area in question. As they approached the area, they observed a gray and green 1956 Chevrolet coming in their direction in the opposite lane of traffic. They also saw that the car was occupied by two white males. Inasmuch as traffic precluded the two detectives from following the car, they called uniformed Officers Cherba and Nugent who were in a police car nearby and asked them to make a traffic stop of the vehicle. In response to this call, Officer Cherba and Officer Nugent stopped the vehicle in question which was being operated by the appellant, Ellis Harley Barber. Barber produced his driver's license and registration card. In less than a minute, Detectives Nelson and McLamb arrived at the scene. Detective Nelson then approached the car and asked Mr. Vermillion to step out; he also asked if he was in fact George Vermillion. Vermillion replied "Yes." Detective Nelson then looked into the vehicle which was a convertible with the top down. He saw a plastic bag containing what he thought to be marijuana. He stated that he had seen marijuana numerous times before and recognized it on sight. He added that he had had formal training in the Police Academy and had been involved in numerous "narcotics" cases. The officers then

proceeded to search the car and found a master key, a diamond ring, a pill container with prescription pills in it, five gloves, a meat cleaver and two two-way radios. They also found an Indiana driver's license, a birth certificate and a chemical company identification card which were all counterfeit. All of the items except the meat cleaver and a table radio (which were found in the trunk) were found in the interior of the car. Officer Cherba testified that they stopped the vehicle only because of the request of the detectives and that Mr. Barber was violating no traffic laws at the time. The trial judge denied the motion to suppress the diamond ring, the pills, the key, the two walkie-talkies, the gloves and the packet of I.D. cards.

On direct examination Detective Van Dyke stated that the aforementioned informant had previously given him information on fifteen or twenty occasions. On each occasion Van Dyke had checked the information out and it had proven to be correct. On cross-examination, Van Dyke stated that the informant had at one time told him that two persons who were involved in trafficking drugs would meet at a specified time. Based on this information he went to the location and observed a narcotics transaction in progress but did not at that time make an arrest. The officer further stated that the informant had taken him to various locations in Prince George's County for the purpose of pointing out the residences of persons who dealt in drugs. He stated that a search and seizure warrant was issued as to one of these locations and that the search revealed narcotics. This, however, did not occur until after April 19, 1973 (the date of appellant's arrest). He also stated that as a result of information furnished by this informant other cases were being pursued but that no arrests or seizures had as yet resulted. A check of the Prince George's County's files, however, indicated that the persons involved had been previously engaged in narcotic transactions.

The appellant claims that the State failed to show that the informant in the case at bar met the two-pronged test of *Aguilar* and *Spinelli*.[1]

---

1. Spinelli v. United States, 393 U. S. 410, 89 S. Ct. 584, 21 L.Ed.2d 637

We hold the requirements of *Aguilar-Spinelli* were met, albeit by the narrowest margin. It is apparent that the information relied on by the detective in his determination that the informant was credible was minimal. When the informant gave him the information regarding the appellant, Van Dyke had observed one illegal transaction and had verified from police files that the other persons named had prior drug arrests. We are thus faced with holding that the informant's credibility was established simply by the observation of Detective Van Dyke of one illegal transaction. This conclusion is supported somewhat by the fact that all other information furnished, although possibly received from unreliable sources, nonetheless proved accurate. Although it is the thinnest evidence on which we have held an informant reliable under the credibility prong of *Aguilar*, we think it is sufficient. *See State v. Edwards*, 266 Md. 515, 295 A. 2d 465 (1972), *State v. Kraft*, 269 Md. 583, 307 A. 2d 683 (1973), *McCarthy v. State*, 22 Md. App. 722, 325 A. 2d 132 (1974). The statement of the detective that he had actually observed the narcotics transaction occurring at the time and place previously indicated by the informant when coupled with a track record showing the absence of false information is at least as reliable as a track record which shows that two or three arrests have been made as a result of information furnished by the informant.

We also think the "basis of knowledge" prong of *Aguilar* has been satisfied. In this regard the instant case comes within the rule established in *Draper v. United States*, 358 U. S. 307, 79 S. Ct. 329, 3 L.Ed.2d 327 (1959). In *Draper* a reliable informant advised the officers that a particularly described man carrying a briefcase would arrive on the train at a particular time. Although the suspect arrived twenty-four hours later than the informer had predicted the Court held that since the future movements of the suspect were detailed by the informant, the details were sufficient in themselves to establish the basis of knowledge required

---

(1969) and Aguilar v. Texas, 378 U. S. 108, 84 S. Ct. 1509, 12 L.Ed.2d 723 (1964).

by *Aguilar* even though the informant neglected to state how he had obtained this information. For a full discussion, see *Stanley v. State,* 19 Md. App. 507, 313 A. 2d 847 (1974) and *McCarthy v. State, supra.*

In the instant case, the information furnished by the informant was detailed and specific. He stated that George Vermillion and Pinkey Barber (the appellant) had just broken into an apartment on 85th Avenue, New Carrollton, that they were in a 1956 gray Chevrolet and that they were still in the area. The reference to the fact that the crime had just been committed; that the culprits were still in the area; and that the crime had occurred at a specifically named location; all indicate that the informer was speaking from present, firsthand knowledge and not from a "casual rumor circulating in the underworld." *Spinelli v. United States, supra* at 416. Indeed under the circumstances it is difficult to imagine a more detailed statement unless the informant was himself a participant in the crime. Thus, although the informant did not in fact disclose the basis of his knowledge, a sufficient basis was established by the self-verifying detail contained in the information itself.

If the officers had probable cause to believe that the occupants of the vehicle were guilty of breaking and entering, there was also probable cause to believe that the vehicle contained evidence of the crime. Consequently, it was subject to a full search. *Compare Howell v. State,* 271 Md. 378, 318 A. 2d 189 (1974) and *Dixon v. State,* 23 Md. App. 19, 327 A. 2d 516.

Under Md. Code, Art. 66$^{1}/_{2}$, § 6-112, a uniformed officer has the authority to stop and check the driver's license and registration of any operator of a motor vehicle. *Shipley v. State,* 243 Md. 262, 267, 220 A. 2d 585 (1966) and *Taylor v. State,* 9 Md. App. 402, 406, 264 A. 2d 870 (1970). While the vehicle was stopped one of the officers involved observed what he recognized from his experience to be marijuana. This information leads to the conclusion that the vehicle might well have contained other prohibited substances and a search of the vehicle was then proper. In such a situation, the seizure of the bottle of pills would be reasonable despite

the fact that they were contained in a bottle showing that the original contents had been obtained by prescription. It will be noted that the diamond ring was found within the bottle. Although the police officers at the time of the seizure did not know that the pills were fruits of the breaking and entering, it became apparent after it was discovered that the master key fit the apartment of the victim and that the diamond ring and the bottle of pills were missing.

The stopping of the vehicle could also be justified under another theory. In *Adams v. Williams*, 407 U. S. 143, 148, 92 S. Ct. 1921, 32 L.Ed.2d 612 (1972), a police officer was told by an informer, whom the police officer knew and who had provided him with information in the past, that an individual seated in a nearby vehicle was carrying narcotics and had a gun at his waist. After calling for assistance, the officer approached the vehicle to investigate the informant's report. The officer tapped on the car window and asked the occupant, Williams, to open the door. When Williams rolled down the window instead, the officer reached into the car and removed a fully loaded revolver from Williams's waistband. The gun was not visible from outside the car. Williams was thereupon arrested for unlawful possession of the pistol. A search incident to the arrest was conducted by other officers who arrived at the scene. They found substantial quantities of heroin on Williams's person and in the car, and they found a machete and a second revolver hidden in the automobile.

In holding that the stop was legal under *Terry v. Ohio*, 392 U. S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968), the Court stated:

> ". . . while the Court's decisions indicate that this informant's unverified tip may have been insufficient for a narcotics arrest or search warrant, see, e.g., *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the information carried enough indicia of reliability to justify the officer's forcible stop of Williams." 407 U.S. at 147, 92 S. Ct. at 1924.

The "indicia of reliability" in *Adams* were the fact that the informer was known to the officer and had given him information in the past. Also deemed important by the Court was the fact that under a state statute the informer could have been charged with a misdemeanor if the information had been false.

The holding in *Adams* applies with equal force to the instant case. Here the informer was known to Detective Van Dyke. He had given information in the past which had been verified. Finally, as in *Adams,* the informer in the case at bar was subject to criminal penalties if he was lying to the police. Md. Code, Art. 27, § 150. In short, we hold that there were enough "indicia of reliability" regarding the informant to warrant reliance by police.

### III Admissibility of Evidence

Finally appellant argues that the trial court erred in admitting the counterfeit driver's license, counterfeit birth certificates and counterfeit identification cards which were seized in the search of the motor vehicle. It is apparent that this evidence was not in any way related to the crime involved in these proceedings. Generally, evidence of other crimes can be admitted only where it tends to show identity, a common scheme or design, motive, intent, or absence of mistake or accident, if such showing has relevance in establishing the principal fact at issue or matter in dispute. *Ward v. State,* 219 Md. 559, 563, 150 A. 2d 257 (1958); *Wilson, Valentine & Nutter v. State,* 8 Md. App. 653, 665, 262 A. 2d 91 (1970). We think that on retrial these items should be excluded from evidence as not coming within the rule.

*Judgment reversed.*
*Case remanded for new trial.*